Lathrop v. Mills.

---

## LATHROP *v.* MILLS *et al.*

THAT part of the eleventh section of the Act of 1856, (Stat. 1856, 56) " For the Protection of Actual Settlers and to Quiet Land Titles," which declares that a suit on a patent shall be brought within two years from the date of the patent, is unconstitutional.   The general provisions of the act being conceded to be unconstitutional, this particular clause also falls, because it is not an independent provision, constitutional in itself, and capable of enforcement without reference to the body of the act.

If, in an act unconstitutional in its main features, there be found a provision which is constitutional, that provision may be carried out, provided it be entirely disconnected from the vicious portions of the act; and the Legislature is presumed to intend that notwithstanding the invalidity of the other portions of the act, still this particular provision shall stand. The saving of the particular provision, even when not upon its face unconstitutional, is matter of legislative intent.

The whole Act of 1856 in question absolutely ignores Mexican grants, and is unconstitutional. Such grants are titles within the full protection, not only of the treaty of Guadalupe Hidalgo, but of the Constitution of the United States, and the Constitution of the State of California.

This act discussed.

Many Mexican grants are legal titles, and most of them are, when united to possession, such equitable titles as are entitled to protection and give a right to a possessory action.

Whether the Legislature has any power to discriminate, by special or general law, between holders of one class or description of legal titles and the holders of another class or description; to say, for example, that A's claim to his estate shall be governed by one set of rules and B's by another; that a Mexican title shall be, though of the same grade, governed by one Statute of Limitation, and an American title, in law of no higher dignity, shall be governed by another; and whether such legislation would not break the uniformity of the operation of a general law which the Constitution enjoins, not decided.

APPEAL from the Twelfth District.

Ejectment for a lot in Redwood city, San Mateo county, forming part of the Pulgas Rancho—the complaint being filed July 11th, 1860, and plaintiff claiming under a patent of that rancho from the United States, dated October 2d, 1857.

Defendants pleaded the general issue and the Statutes of Limitations of 1850, 1855 and 1856—relying upon the eleventh section of the latter act.

That act, omitting sections four, five, six, seven, eight and nine, which simply regulate the setting up by defendant of any claim for improvements by way of offset to the legal title to plaintiff, if it be established, and require plaintiff to pay defendant the value of the improvements, growing crops, etc., as fixed by the verdict, within six months, or forfeit the land, is as follows:

" SECTION 1. All lands in this State shall be deemed and regarded as public lands until the legal title is shown to have passed from the Government to private parties.

" SEC. 2. Actual and peaceable possession of land shall be *prima*

Lathrop *v.* Mills.

*facie* evidence of a right to such possession in the person so in possession.

" Sec. 3. In all cases when lands are claimed under or by virtue of a patent from the United States or from this State, the right of the party claiming under the patent to the land shall be deemed to begin at the date of the patent, and he shall not be entitled to recover for the use or enjoyment of such land prior to the date of such patent.

" Sec. 10. The provisions of this act shall extend to all litigation for lands, or for the possession of lands, claimed under or by virtue of any Spanish or Mexican grant, or any grant made by the Governors of California, unless the said grants shall have been surveyed, and the boundaries plainly and distinctly marked out, and kept so plainly and distinctly marked that said boundaries could at any time, when improvements were being made on said lands, be easily seen and certainly known, and unless said grant and the plat, and the field notes of the survey of the same, shall have been recorded in the office of the Recorder of the county in which the lands lie before such improvements shall have been made.

" Sec. 11. No action of ejectment or other actions to recover the possession of lands shall hereafter be sustained, unless such action shall have been commenced within two years after the cause of action accrued ; and the cause of action shall be construed to commence at the date of the issuance of a patent as against all persons settled upon and occupying any part of the land patented, unless such persons hold or claim to hold under the patentee or his grantees ; *provided, however,* that infants and married women shall have the same time allowed them to begin their action, after their disability shall be removed, as is by this section allowed.

" Sec. 12. No person or persons shall claim the benefits of this act for any improvements made on private lands after the confirmation of such lands by the Board of the United States Land Commissioners, or the United States Courts, where the occupant or those under whom he claims obtained possession of the land after such confirmation.

" Sec. 13. The provisions of this act shall not apply to the lands of the State lying below tide water mark ; nor shall any person who

has entered upon land of another through actual force or fraud, or who has entered upon inclosed land claim by another under the Governments of Spain or Mexico, be entitled to the benefit of the provisions of this act. Nor shall the provisions of this act apply to actions between landlord and tenant, when there is a contract of renting or lease."

Under the general issue, an attempt was made to show that the land was covered by the ordinary high tides of the bay of San Francisco, and that the title to it was outstanding in the State, and did not belong to the plaintiff by virtue of the grant and patent of the Pulgas Rancho.

The questions under this plea arose upon the introduction of evidence, and exceptions thereto, showing that the land was below the ordinary high tides, etc. In short, the case, on this branch of it, was the same as in *Teschemacher* v. *Thompson* (18 Cal. 12).

The questions under the defense of the Statute of Limitations of 1856, arose upon objections to the admission of evidence, on the part of defendants, in support of the plea of the statute; and also, upon instructions asked by plaintiff, and refused, and instructions asked by defendants, and granted. The only instructions for defendants necessary to be noticed, were the fourth and fifth, as follows:

" 4th. But if the jury should be satisfied, from the evidence, that the defendants were in possession on the eleventh day of July, 1860—yet, if they are likewise satisfied, from the evidence, that such possession had existed continuously for two years or more immediately before that date, and since the issuance of the patent, and that during said two years the relation of landlord and tenant did not exist between the defendants and plaintiff, or his grantors, or any other agreement or legal obstacle, to preclude or suspend the right to sue the defendants; or if the same cause of action which existed against the defendants on the said eleventh day of July, 1860, had existed continuously for two years or more before that date, then it is barred by limitation, and the verdict must be for the defendants.

" 5th. If the jury are satisfied, from the evidence, that the cause of action, if any exist in this case, accrued or commenced

two years or more before the eleventh of July, 1860, then it is barred by the Statute of Limitations, and the plaintiff cannot recover."

The instructions asked by plaintiff, and refused, were as follows :

" 3d.  That on the issue of the Statutes of Limitation, unless the jury find that the premises, or some part thereof, have been protected by a substantial inclosure ; or that some part thereof has been usually cultivated or improved for the space of two years before the commencement of this action ; and have been so held by them under a claim of title exclusive of any other right, but not under any conveyance, judgment or decree of a competent Court, they will find for the plaintiff on this issue ; and if they do find that the premises, or some part thereof, have been so protected by a substantial inclosure, or have been so usually cultivated or improved, and so held adversely, they will then find for the plaintiff for all said premises, except the part so inclosed, or cultivated, or improved.

" 4th.  That the occupation of the premises by any other person than the one who established a legal title to the premises, shall be deemed to have been under and in subordination to the legal title, unless it appear that said premises have been held and possessed adversely to such legal title for two years before the filing of the complaint herein.

" 5th.  That if the jury find that the occupant of the premises, or any part thereof, or his agents, have so acted as to give the plaintiff, or those under whom he holds, just cause to believe that the holding was not exclusive of, nor adverse to, the title of plaintiff, and those under whom he holds, then the jury will find for plaintiff on said issue of the Statute of Limitations.

" 6th.  That the evidence respecting the flow of the ordinary high tides over parts of the premises in controversy, which are not shown to be in the possession of the defendants, is immaterial, and is not to be taken into consideration by the jury, except so far as it bears on the parts which are shown to be in possession of defendants.

" 7th.  That the actual occupation and settlement referred to in section eleven of the Act of March 26th, 1856, entitled ' An Act

for the Protection of Actual Settlers,' etc., must be the occupation and settlement defined by the Act of April 20th, 1852, entitled ' An Act Prescribing the Mode of Maintaining and Defending Possessory Actions on Public Lands in this State,' except in cases of actual inclosure, cultivation or improvement.

" 8th. That the occupation and settlement which shall be sufficient to enable the defendants in this case to avail themselves of the Statute of Limitations are : that they must have been citizens of the United States before such occupation, etc. ; and as such, before that time, must have filed in the office of the Recorder of the county where the land lies, their affidavit, setting forth that the tract does not embrace more than one hundred and sixty acres, that they have made no other like claim to land in this State, and that to the best of their knowledge said lands are not claimed under any existing title—that is to say, unless the same, for two years next preceding the commencement of this suit, were actually inclosed, cultivated or improved.

" 9th. That the jury must believe that such an affidavit, setting forth the facts mentioned in the eighth instruction asked—as to the quantity of land taken up, that they have taken up no other land, and that to the best of their knowledge it was claimed under no other title —was made and filed with the County Recorder two years before the commencement of this suit, in order to enable the defendants to avail themselves of the Statute of Limitations of two years.   That such affidavit must have been so filed at the date of the issuance of the patent or since."

Verdict and judgment for defendants ; plaintiff's motion for new trial having been overruled, he appeals.

*Sidney L. Johnson,* for Appellant.

I.   The eleventh section of the Act of 1856 is unconstitutional.

In determining the validity of this section the whole act must be looked to.   Its title, " An Act for the Protection of Actual Settlers and to Quiet Land Titles in this State," is significant.   The first and second sections declare rules for the guidance of Courts.   All lands in the State, the legal title to which is not shown to have passed from the Government to private parties, are to be deemed

public lands, and the actual and peaceable possession thereof shall be *prima facie* evidence of a rightful possession.   By the third section the rights of parties claiming under patents are made to begin at the date of the patents.   Thus, by these three sections, all rights which might be asserted under Spanish and Mexican grants are destroyed.   The patents from the United States which might be issued to the grantee of the Spanish or Mexican title, might give a right to recover the land, but not the anterior rents and profits. The six following sections required the plaintiff, who recovered the land in ejectment, to pay the defendant the value of his improvements, and of the growing crops on the land, within six months after the verdict, or forfeit the land.   The tenth section made the provisions of this act " extend to all litigation for lands, or for the possession of lands claimed under or by virtue of any Spanish or Mexican grant, or any grant made by the Governors of California, unless the said grants shall have been surveyed-and the boundaries plainly and distinctly marked," etc.   The effect of this section, taken in connection with the others is, that there could be no action to recover lands under the grants mentioned, unless surveyed, marked by visible boundaries and recorded according to the provisions of this section.   Under the first section, all lands in the State claimed under such grants, would be deemed public lands ; and under the second, the actual settler would be held the rightful possessor.   The tenth section excepts from this general annihilation such of these grants as should come within certain conditions expressed in the latter part of the section.   It may be safely said that no one of the grants spoken of came, or could be brought, within those conditions.   No lawful survey could be made of them, except by the surveying department of the United States, and then not until after final confirmation.   The field notes of those surveys would not be at the disposal of the claimant, and no provision is made authorizing copies of them, certified by the United States Surveyor, to be recorded.

Under section eleven, nobody can sue for recovery of the possession of the land, unless and until he had a patent.   He can have no other cause of action ; none founded on any grant from the Spanish or Mexican Government, or from the Governor of California.   (Secs.

1, 2, 10, 11.)  No matter how perfect or complete such grant may be, it is as unavailable to the grantee, either to recover possession or rents and profits, as if never made.  Thus vested rights of the most precious nature, secured by the express stipulations of the eighth article of the treaty of Guadalupe Hidalgo, as well as by the Constitution of the State and by common right in any civilized country, are stricken out of existence.  The act is null in the eleventh section as well as in all the others, because it violates those rights secured by the eighth article of the treaty ; because it violates the article of the Constitution securing vested rights, and also the article declaring that laws of a general nature shall have a uniform operation.  Nothing is clearer, from the whole tenor of the act, than that it was aimed expressly at the right of property held by Mexicans, or their grantees, and secured by the eighth article of the treaty ; that it impairs and divests vested rights.  ( *Gunn, Adm'r,* v. *Bates,* 6 Cal. 263.)  In *Ferris* v. *Coover,* (10 Cal. 589) and the series of cases following it, the rights claimed under Mexican grants have been placed on a firm foundation, and are no longer questioned in the Courts.  In *Billings* v. *Hall,* (7 Cal. 1) the most vital parts of the act, the provisions of sections four to nine inclusive, were directly in question, and held unconstitutional as being against common right.  We have then the nullity directly or indirectly declared, of all that part of the statute which denies a right of action on Mexican grants, which says that no cause of action shall be held to accrue until the date of the patent.

The limitation then, in section eleven, is no longer uniform.  It was a law of a general character, and as such ought to be uniform in its operation.  There was to be no cause of action founded on any grant except a patent, and from the date of it the statute was to run.  But by the effect given or refused to this legislation, a cause of action may exist for more than two years on a claim to recover lands under Spanish and Mexican grants, and not be barred by this statute, while it is contended that a claim under a patent is barred in two years, just as if the Courts had held valid and effectual all of the provisions of the whole act.  It is impossible now for this Court to give effect to the eleventh section, as the Legislature intended it, without overruling a whole series of its most important

Lathrop *v.* Mills.

decisions involving rights and rules of property. It cannot treat one half of a clause as valid and the other half as null.

When, in *Billings* v. *Hall,* the most vital parts of the act to the settlers were declared unconstitutional, as being against common right, the whole statute was supposed to be overthrown. There was nothing in the title or general scope of the act to inform the public that a Statute of Limitations was embodied in it. This Court, differing in that respect from the supreme tribunals of some of the States, has held the provision of the Constitution, requiring that all laws should have but one object, which should be expressed in their title, to be merely directory, and has refused to consider null laws that were in contravention of that provision. But it may weigh with the Court against the fragment of a clause of a section of an act set up against us as having vitality, notwithstanding all this mutilation, that under the Constitution and the title and scope of the act, the public had no reason to look for any such clause in the act. Does this clause bar, in two years, an action of ejectment founded on prior possession? We believe it has never been so held, and considering the act in all its parts, we cannot find that it does. There would exist the anomaly, that a claim of title founded on prior possession could be set up any time within five years and proved by parol, while a claim of title founded on the highest record evidence could not be set up after two years. A bar of two years, under the circumstances of many Mexican grants, must amount to forfeiture of rights, without the slightest laches on the part of the claimant, or the slightest equity in favor of the possessor. The patentee can in no case of a patent from the United States have the benefit of the whole period of two years from the date of the patent. Some time must elapse in the transmission of the patent to him; without any fault of his, a considerable portion, or the whole of the period of grace, might escape before he could get possession of it and make it available.

II. The Court erred in all its rulings respecting this act in the fourth and fifth charges in favor of defendants, and in refusing to charge according to the third, fourth, fifth, sixth, seventh, eighth, ninth and tenth prayers of the counsel for plaintiffs.

If effect is to be given to the eleventh section of the Act of

34

1856, as a Statute of Limitations, it can only be so far as defendants make out in themselves, and those under whom they hold, an adverse possession for the required period. Sections nine to thirteen of the Act of April 22d, 1850, (Wood's Dig. 46, 47) have never been repealed, directly or indirectly, except so far as the time of the required adverse possession may be considered to be reduced by the Act of 1856—from five to two years. Those sections are declaratory of principles of the common law applicable to all pleas of any Statute of Limitations in bar of the action of ejectment, and are intended merely to define and fix them with more precision. (Angell on Lim. secs. 384, 390, 391, 392, 394, 395, 396, 400, 401, 402. See also the numerous cases collected under the title of Adverse Possession, in the Appendix to Adams on Ejectment, particularly page 582, and following, in Waterman's edition, 1854.)

These sections, nine, twelve and thirteen of our Act of 1850, authorized the charges prayed for in numbers three, four and five. They were the law of the case under the issue of the Statute of Limitations, the defendants neither showing nor attempting to show any color of title in themselves, nor any claim of title. " One never loses his land unless there is a continued and adverse possession." (*The People* v. *Van Rensselaer*, 8 Barb. 189, 201, citing 17 Wend. 642; 7 Id. 125: 24 Id. 587; 2 Lord Raym. 750; 4 How. U. S. 289.)

But it might be contended that the title, object and language of the Act of 1856, indicated that sort of possession which the Act of April 20th, 1852, (Wood's Dig. 526) " prescribing the mode of maintaining and defending possessory actions on public lands in this State," authorizes and defines as the possession of " persons settled upon and occupying any part of the land patented," spoken of in section eleven of the Act of 1856. We therefore prayed the Court to charge, that in default of actual inclosures, or cultivation or improvement, which in our opinion were necessary to render a possession without color of title adverse, under sections twelve and thirteen of the Act of 1850, there must be at least such possession as that authorized in the Act of 1852. Hence the prayers in numbers seven, eight, nine and ten, which were refused by the Court

They might have been refused on the ground that the adverse possession defined in the Act of 1850 continued during the whole time fixed by the statute for the bar, and was the indispensable condition of its efficacy. But by refusing all of these prayers the Court has denied every principle of the common law, or of our statute law, by which the jury could set any limit or boundary to the supposed possession of the defendants.

*Whitcomb, Pringle & Felton,* for Appellant.

We contend that section eleven of an Act for the Protection of Actual Settlers, and to quiet Land Titles in this State, is unconstitutional and void.

1. Because it is so connected and interwoven with other portions of the same statute, confessedly unconstitutional, that effect cannot be given to it according to the true intent and meaning of the Legislature in passing it. (*Warren et al.* v. *Mayor and Aldermen of Charlestown,* 2 Gray, 84.)

2. Because the whole object of said act is contrary to natural justice and the Constitution of the State, in that it is to divest the legal and vested rights of one class of citizens and to confer said rights upon another class of citizens. And that section eleven is intended as a part of such immoral and unconstitutional scheme, and is in no proper sense intended as a Statute of Limitations.

3. We contend that said section has no application to cases where lands are claimed under Spanish grants, as well as patents; since otherwise it would be in contravention of section six of the Act of Congress to provide for the survey of the public lands in California, the granting of preëmption rights therein, and for other purposes. (United States Statutes at Large, vol. 10, 246.)

This eleventh section of the Act of 1856 cannot be carried into effect according to the true meaning and intent of the Legislature. Taking the provisions of sections one, three, ten and eleven together, and it results that the intention of the Legislature was : 1st, to destroy all causes of action founded on Spanish or Mexican grants, or grants made by the Governors of California (Sec. 10) ; 2d, by this process to create only one source of title, namely : the title from the Government (Sec. 1) ; 3d, to ignore the cause of action

Lathrop *v.* Mills.

founded on decrees of confirmation and final surveys, and to substitute therefor the simple patent (Secs. 3 and 11). So that this act, thus taken in its entire scope, is as follows: 1st, all Spanish and Mexican titles are abolished; 2d, there shall be but one cause of action, and that shall be the patent; 3d, all actions shall be brought within two years from the date of the issuance of the patent.

But so much of this act as destroys the Spanish and Mexican grants, is unconstitutional; and this Court has so decided. Now, if we strike out from this law as unconstitutional all the causes of action except those founded on patents, we cannot give effect to the latter part within the meaning and intent of the Legislature, which was to make patents the sole source of title. The Courts have decided that they have not succeeded in their intention with regard to Spanish and Mexican titles; but that these still exist unlimited and unrestrained by this act. The consequence will be, that instead of the patent being what the Legislature intended it should be, the principal source of title, it becomes a title wholly subordinate and inferior to the titles which it was designed to replace. To strike out of the law all that relates to unpatented Spanish and Mexican grants, and keep in that portion relating to patents, is wholly to change the relation between them which the Legislature sought to establish.

Again: the Constitution of the State of California requires that every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title.

True, this part of the Constitution has been held by the Supreme Court to be directory; but we urge that, notwithstanding this decision, this provision is mandatory. Whether directory or mandatory, the presumption is that the Legislature has complied with it, until the contrary clearly appears; so that we have a right to assume that this section eleven of the act, and the entire act, was passed for the purpose of carrying into effect one single object, and and that that object is the one expressed in the title. If, then, the object of this law, as shown in the entire act, and expressed in the title, is unconstitutional, each and every part of the law must fall.

Now the object of this law, as shown by the title, is "to protect actual settlers, and to quiet land titles in this State." What is the

class of persons to whom by this act protection is to be given—the actual settlers.  Settlers on what?  Settlers on lands belonging by the very theory of the act, not to the State, nor to the United States, but to private parties, subjects of the same Government as the actual settlers, and with rights just as much entitled to the protection of the Government as their own.  Still further, these very settlers are trespassers, acting in direct violation of the laws of the United States, which forbid them to enter upon lands even claimed by the holders of Spanish or Mexican grants; while the persons against whom this protection is to be given are the real owners of the land.  We have, then, a law in its avowed object designed to protect one class of citizens, with no legal rights at all, from the vested rights of another class of citizens equally entitled to protection; and the means by which that law is attempted to be enforced, involve the absolute and entire confiscation of legal rights.  The object of the Legislature, then, as expressed in the title and shown in the contents of the law, was illegal and immoral.  If so, how can section eleven, passed in furtherance of the general object of the law, as we have a right by the Constitution to assume it was, be legal, when the very object which it was designed to subserve is illegal.

Again : section eleven of this act was intended, not as a substantive Statute of Limitations, but only as a means to carry out the one avowed object of this act—that of despoiling the land owner in favor of the trespasser.  If this section were intended to be a *bona fide* Statute of Limitations, why does it prescribe the short and most unreasonable time of two years for patents, while it prescribes no time at all for titles resting on mere possession?  Statutes of Limitation which do not give a reasonable time within which to bring an action are unconstitutional for this sole reason, (Smith's Com. 406–8) and the Court must determine what is a reasonable time.

It hardly needs more than this simple statement, that the Legislature has left the settler unlimited as to his time for bringing an action which can only be sustained by parol evidence, and limited the claimant under the patent to the short term of two years, to demonstrate that their intention was not to pass a Statute of Lim-

itations, but to oppress and harass the land owner. Besides, the very theory of the Statute of Limitation is, that the interests of society require that causes of action should not be deferred an unreasonable time. (Angell on Lim. 10, *et seq.*) But this section eleven, taken in connection with the rest of the act, was passed not for the purpose of compelling those who had titles to bring actions upon them immediately or within a reasonable time; on the contrary, it was intended to prevent those who actually did have good and sufficient titles derived from the Mexican and Spanish Governments from bringing any action at all upon such titles, until they should have been confirmed by the Government.

Section eleven is on its face only a portion of the scheme of the Legislature to destroy all causes of action not founded on patents, other than possessory claims.

The language of this section is general. It is that no actions whatever shall be sustained unless commenced within two years. Nor is this phrase qualified or restricted by the succeeding sentence, for that is equally broad. Now, when we consider that section one attempts to destroy altogether causes of action not proved by a title from the Government; that section ten expressly extends all the provisions of the act to Spanish or Mexican grants, or grants made by the Governors of California; that through the whole act the idea of the Legislature is manifest to restrict all causes of action to one alone, and that founded on patents, it becomes clear that the Legislature intended by section eleven to enact that there should be but one cause of action, and that cause of action should be construed to commence at the date of the issuance of a patent.

And further, this section attempts to destroy the patent itself in two years from its date.

Now, suppose a patent is issued to land altogether vacant, and the patentee does not within two years take possession of his land; suppose, further, at the end of two years a settler enters upon the land, and the patentee, after two years have expired, brings his action. The answer of the settler is: " It is more than two years since the date of your patent. · The cause of action must be construed to commence at the date of the issuance of the patent, and although I have been here in possession only one day, your patent

is worthless." In other words, the Legislature has made a cause of action to commence absolutely at a certain date, without reference to the fact as to whether at that time there was or was not a real cause of action; and at the end of two years the statute has run against the patent itself. The patent is then dead. The only way to avoid this monstrous consequence is for the Court, by ingenious construction, to find some sensible meaning where the Legislature itself had none. But this is not the case for a Court, where the object of the Legislature is so clearly wrong, to help it out.

Again: Statutes of Limitations are laws of a general nature, and by the Constitution should have a uniform operation. (Const. art. —, sec. 11.)

The intention of this provision was that all persons should be equal before the law, and that, on the same state of facts, one law should not be applied to one person and another law to another person. (*People ex rel. Smith* v. *Judge of Twelfth District*, 17 Cal.)

Now, if this law is held applicable to patents and not to Spanish and Mexican grants, or possessory titles, we have a preference given to different classes of titles, although the legal facts are the same. This statute in effect reads thus: 1st, All titles derived from the United States shall be barred in two years. 2d, All titles derived from possession or from the Spanish or Mexican Government shall have five years.

That is to say, the Legislature has classified these titles simply by reference to the source from which they come. Now, how does the fact that one title comes from one source and another from another, make any difference in the legal facts of the case. If the Legislature can pass this law, what prevents it from saying that all the titles which come from John Brown shall have one law applied to them and all the titles which come from John Doe another? What should prevent them from enacting that all the promissory notes made by A should be barred in one year, and all the promissory notes made by B in ten; that all personal trespasses committed on William should be barred in one month, and those committed on John in ten years.

Again: this section can have no application to public lands of

the United States which are claimed under any foreign grant or title.

See an act to provide for the survey of the public lands in California, the granting of preëmption rights therein, and for other purposes. (U. S. Stat. at Large, vol. 10, 246.)

By that act, lands claimed under any foreign grant or title are expressly reserved from preëmption. There can, therefore, be no actual settler on these lands, unless such settler is there in defiance of the law of the United States, the proprietor of these lands.

A State law which allows settlers, by disobeying the Law of Congress relative to lands belonging to the United States, to gain rights against the claimants under foreign grants, the very persons whom that law was designated to protect, would be void. It would be in direct opposition to a law of the United States Government with regard to lands in litigation in its own Courts.

*J. W. Coffroth* and *G. W. Spaulding*, for Respondents.

The eleventh section of the Act of 1856 is constitutional. It is matter of remedy and does not destroy vested rights; nor does it deny the holders of Mexican grants a right of action until they receive a patent. (*Billings* v. *Hall*, 7 Cal. 6; *Fremont* v. *Seale*, 18 Id. 433.)

*W. A. Cornwall*, also for Respondents.

I. The eleventh section of the Act of 1856 is constitutional, and has been so recognized in the concluding paragraph of the opinion in *Morton* v. *Folger*. (15 Cal. 284.) The whole subject of limitation to actions is within the power of the Legislature. (*Billings* v. *Hall*, 7 Cal.) The fact that a portion of the Act of 1856 was declared, in *Billings* v. *Hall*, to be unconstitutional, does not affect the other portions of the act; the eleventh section must be treated separately, as a Statute of Limitations, having no connection whatever with the other parts of the law; if this eleventh section had been adopted as a distinct law at a different period of time, there would have been no room for argument in regard to its constitutionality. The mere fact of its passage at the same time as the other parts of the law which have been held unconstitutional, does not make it also unconstitutional.

The effect of the eleventh section is not to divest the vested rights of one class of citizens or to confer said rights upon another class of citizens; but only to fix some limit to vexatious litigation. The suggestion of counsel that it was the intention of the Legislature to destroy all causes of action founded on Spanish and Mexican grants where no patent had been issued, is of no force; if the grant is confirmed, the patent issues; if there was any power to prevent the issuance of the patent upon the confirmation of the grant, then there might have been a pretext for such a position.

In *Yount* v. *Howell* (14 Cal. 469) this Court says that a patent takes effect by relation from the first step in the proceedings for the confirmation of the grant; and this construction of its effect is perfectly consistent with the statute under consideration, and confers upon the claimant under the grant a right of ejectment up to the period of the issue of the patent and for two years thereafter. The suggestion, therefore, that the object or the effect of the act is to destroy any vested rights or to destroy causes of action founded on Spanish grants, merits no consideration.    The eleventh section of this law only applies to actions brought to recover the possession of lands after the issuance of a patent; it has no application to other cases.    (*Morton* v. *Folger*, 15 Cal. 284.)

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

The question presented by the record is this: Is that part of the eleventh section of the Act of 1856, (Stat. 1856) which declares that a suit on a patent shall be brought within two years from the date of the patent, constitutional?

It is admitted that the Act of 1856, in its general features, is unconstitutional; and such has been the decision of this Court. But now it is insisted that though the general provisions of the act are unconstitutional, yet that this particular provision is constitutional, and therefore is valid, notwithstanding the invalidity of the other provisions of the act.

It is true, that the Constitution merely interdicts acts which oppose its provisions, and that if in any act there be found a provision which is constitutional, that provision may be carried out,

provided the excepted provision is entirely disconnected from the vicious portions of the act, and the Legislature is presumed to intend that notwithstanding the invalidity of the other parts of the act, still this particular section shall stand.   The saving of the particular provision, even when not upon its face unconstitutional in such instances, is therefore a matter of legislative intent.   In order to sustain the excepted clause, we must intend that the Legislature, knowing that the other provisions of the statute would fall, still willed that this particular section should stand as the law of the land.   This general question arose in the case of *Warren et al.* v. *Mayor and Aldermen of Charlestown.* (2 Gray, [Mass.] 85.) In that case the Court, the learned Chief Justice Shaw delivering the opinion, said : " It is no doubt true, as has been argued by the learned counsel for the prosecutors of this writ, that the same act of legislation may be unconstitutional in some of its provisions and yet constitutional in others.   It was so decided in the case of *Fisher* v. *McGirr,* just cited, in which it was held that all that part of the Act of 1852 respecting the manufacture and sale of spirituous liquors, which authorized a seizure of liquors on the terms and in the manner there provided, was unconstitutional ; and yet we are every term rendering judgments against persons for selling spirituous liquors contrary to other provisions of the same statute.   There is no inconsistency in this.   Such act has all the forms of law, and has been passed and sanctioned by the duly constituted legislative department of the Government ; and if any part is unconstitutional, it is because it is not within the scope of legitimate legislative authority to pass it.   Yet other parts of the same act may not be obnoxious to the same objection, and therefore have the full force of law in the same manner as if these several enactments had been made by different statutes.   But this must be taken with this limitation, that the parts so held respectively constitutional and unconstitutional must be wholly independent of each other.   But if they are so mutually connected with and dependent on each other as conditions, considerations or compensations for each other, as to warrant a belief that the Legislature intended them as a whole, and that if it could not be carried into effect the Legislature would not pass the residue independently, and some parts are uncon-

stitutional, all the provisions which are thus dependent, conditional
or connected, must fall with them."

Applying this doctrine to the statute in question, we find, on a
review of it, nearly every single provision of it in plain contraven-
tion of the Constitution.    Section three declares, that in all cases
where lands are claimed under and by virtue of a patent, the right
of a party claiming under the patent shall be deemed to begin at
the date of the patent, and he shall not be entitled to recover for
the use and enjoyment of such land prior to the date.    No excep-
tion is made for cases of a legal title held under Mexico, or a per-
fect equity accompanied with possession; but the section is a
sweeping process of confiscation and destruction of all rights of
property, or the use or enjoyment of it, and of all remedies for the
invasion of it existing prior to the date of the patent.    Not only
this, but even those rights founded upon the antecedent claim, and
which are necessary to be acknowledged in order to protect the
patentee by relation from intervening claims, are also ignored.
While the Legislature could not destroy the patent, it has assumed
the prerogative of destroying all the bases upon which it rests, and
all the titles derived from Mexican authorities.    The subsequent
sections provide for the defenses that may be interposed in suits
upon the patent; as by offset and appraisement of improvements
by tenants in possession, etc.; and these sections have already
been pronounced unconstitutional by this Court.    Then comes the
eleventh section, which renews the subject of the title.  " Section
11.  No action of ejectment or other action to recover the posses-
sion of lands shall hereafter be sustained, unless such action shall
have been commenced within two years after the cause of action
accrued; and the cause of action shall be construed to commence
at the date of the issuance of a patent as against all persons settled
upon and occupying any part of the land patented, unless such per-
sons hold or claim to hold under the patentee or his grantees; *pro-
vided, however*, that infants and married women shall have the same
time allowed them to begin their action, after their disability shall
be removed, as is by this section allowed."

This section gives the rule as to the time of commencing actions.
But it does more.   It defines what constitutes a cause of action in

ejectment, and when and how it shall accrue.    It must be taken in connection with section three, to which its matters relate.    Taking the two sections together, this is the sum : 1st, whenever a patent issues, the sole claim of the holder shall rest on the patent, and his entire rights in respect to the land shall be limited by the patent and refer to its date ; 2d, no action of ejectment shall be brought except within two years ; and 3d, this accrual of the right is, in judgment of law, only from the date of the patent.    So far, then, an arbitrary rule is made for all cases, at least arising under a patent, that suits are to be brought within two years *of the date* of the patent, or else no use can be made of the patent, and it becomes a nullity for all purposes of title or as evidence of title. It prescribes, in other words, a rule absolutely impracticable ; for it makes no exception of the time of receiving the patent, or for legal or other delays, by injunction or otherwise, in getting it, or being able to set it up ; nor does it make any exception in cases where the defendant intruded upon the premises or obtained possession after the issuance of the patent, or after the two years.    It is true, that in the section the words are used, " as against all persons settled upon or occupying any part of the land patented ; " but this language does not import, nor was it intended to import, that these persons, to be within the benefit of the section, must be on the land at the date of the patent.    It might be so construed, if the statute did not in its main scope and body indicate a different purpose, and if the intent were plain that this act was designed as a general Statute of Limitations in respect to actions for real estate.    But the whole act shows a purpose of hostility to land grants, the strongest and most stringent provisions having been inserted in the act against such claims.    The title of the act is : " For the Protection of Actual Settlers and to Quiet Land Titles."    Besides, to strain the language " settled upon," etc., to mean *so settled* at the date of the patent, would leave the absurdity of providing for suit on a patent within two years, as against an occupant who was such at the date of the patent, and yet no limitation to actions upon the patent against those who came the same day or the next three years on the land.    Moreover, the proviso is, that married women and infants shall have the same time allowed to begin their actions, after

Lathrop *v.* Mills.

their disability shall be removed, as is by this section allowed. This surely does not mean that the infant shall have two years after he gets of age—which might not be for twenty years—to bring an action against those *settled on the land at the date of the patent, and none others.*

The object of the Legislature becomes evident when we look to the first and subsequent sections. This section declares that *all* lands in this State shall be deemed as public lands until title is shown to have passed from the Government to private parties. *The* Government here meant is the Government of the United States. It was probably supposed that the common law rule prevailed, that ejectment could not be maintained except upon a legal title, and this title was declared by this act to be in the United States. If the party plaintiff was not in possession, he could only, as a general rule, recover on his paper title, and though he held a Mexican grant, this would not, under the act, avail him, for it is declared that the land shall be deemed and regarded as the land of the United States, and therefore the Mexican grantee could not recover it against a settler entering upon it as such. Having disposed of all present Mexican titles, the Legislature designed to make the scheme of settlement of titles complete, by prescribing what was to be done with the titles which the Mexican grantee should or might acquire in future; and the eleventh section, in the execution of this scheme, proceeded to declare that while a cause of action might accrue from a patent, yet that it should only accrue from the date of the patent, and that cause should not exist unless suit were brought within two years from such date. And even when enforced within that time, the conditions as to improvements, rebatements and recoupments should be encountered as specified in the body of the act. But no such partial meaning as that now sought to be interpolated was designed by the Legislature to be given in the eleventh section. The act was intended to be comprehensive, and go the full length of the language used, and to limit and define the full extent of the operation of the patent, and its effect as a cause of action against all settlers, and not as to a particular class of them, viz: those at the date of a patent in occupation of patented lands. Indeed, it is questionable whether the Legislature had any constitutional power

to make any such discrimination as that insisted on, for this would be making a partial operation of a general law. It would be declaring that there was one Statute of Limitations for one class of trespassers, and another for another class standing in the same category. Again: the section makes the fact that a possessor occupied "*any part of the land patented*," sufficient to give the accrual of the cause of action as to him from the date of the patent, without any limitation as to the part occupied. This might, under some circumstances, be considered a mere inadvertence, and if the general intent were clear, we might be disposed to hold the operation as limited to such lands as the occupant possessed; but the scope and spirit of the whole act forbid such construction.

That the whole of the act ignoring Mexican grants is flagrantly unconstitutional, there can be no question. These grants are titles within the full protection, not only of a solemn treaty, but of the Constitution of the United States and the Constitution of the State of California. This view leaves the statute ineffectual as to such grants, and also as to a possessory title. Many of these grants are legal titles, and most of them are, certainly when united to possession, such equitable titles as are entitled to proetction, and give a right to a possessory action in Courts of Justice. It is not necessary to decide whether the Legislature has any power to discriminate, by special or general law, between holders of one class or description of legal titles, and the holders of another class or description; to say that A's claim to his estate shall be governed by one set of rules, and B's by another; that a Mexican title, so called, shall be, though of the same grade, governed by one Statute of Limitations, and an American title in law of no higher dignity, shall be governed by another; whether this does not break the uniformity of the operation of a general law which the Constitution enjoins. This serious question becomes unimportant here, for the whole question of the constitutionality of the eleventh section is presented in another and perhaps a clearer light. We have seen that the rule is, that a particular clause in an unconstitutional act can only be saved when it is unconnected with the general purpose, but stands of itself as an independent provision.

It follows from what we have said that this eleventh section is

Lathrop *v.* Mills.

not an independent provision, constitutional in itself, and capable of being enforced without reference to the body of the act. It is simply auxiliary to the general unconstitutional scheme of which it forms a part. It is itself, by its very terms, according to their natural and intended construction, as plainly unconstitutional as the preceding sections. Nor can it be supposed that the Legislature, if it had known that the other provisions would be held void, would have passed this section; for by the law in force, Mexican grantees have five years after the cause of action accrued within which to sue, and these grants were attempted to be ignored. Can it be supposed that the Legislature, recognizing these grants as titles, would have prescribed for them a different and longer period of limitation than for patents of the Federal and State Governments? Is it to be believed that the Legislature would by this act have elevated a Mexican grant above a Federal patent, when this very act shows a purpose to ignore and discard the Mexican title—or that the Legislature would have given five years within which to sue on a mere right of possession, without any paper title, and limited a patent, the most solemn and imposing muniment of title, to two years *from its date?* Can we infer, when it passed this act of thirteen sections, that it would have been willing to pass the eleventh section if all the other, and those the material sections, had been stricken from the bill; and then have violated the Constitution by passing an act the subject of which was not expressed in the title? If, however, we are right in our idea of the meaning of the eleventh section, when taken in connection with the whole scope and effect of the act, it is simply a legislative edict, that no cause of action shall be maintained on a patent after two years have elapsed from the issuance of it, the effect of which would be to give no legal protection after that time to a title so derived; and this would be to impair, if not destroy, the obligation of the contract. It is possible that a constitutional effect might be given, *by construction,* to this section, by imposing an arbitrary limitation upon its obvious and intended meaning; but we have no power to make such construction. For no case can be found in which a provision in a statute, the body of which statute is unconstitutional in its whole scope and effect, and which provision is, according to its fair

construction, also unconstitutional in its general effect, has yet been declared valid, because a partial operation might be given to such isolated provision by the Courts, and such operation not be obnoxious to constitutional exceptions. If an act, unconstitutional throughout, were passed, denying trial by jury to all persons in the State, the Courts would not hold it saved by applying it to a class of persons not citizens, as to whom such a provision *might* have been constitutionally made, if such were the sole intent.

We feel the less hesitation in removing this last relic of unconstitutional and oppressive legislation upon the subject of land titles from the statute books, for the reason that the Limitation of five years is a shorter period than that allowed, it is believed, in any other State; and that to give effect to an isolated provision of this sort, found in an act whose substantial provisions have already been declared invalid, would only produce confusion and uncertainty. Legislation which injuriously assails vested rights of property by arbitrary and oppressive enactments, however plausibly it may be commended because of temporary interests, or particular instances of hardship, is in the end in the highest degree hurtful to the general society, since it shakes that sense of security and destroys that protection to the acquisitions of labor from which proceed the wealth and progress of a State, and the peace, industry and welfare of its people. Or, as the most brilliant writer of his time expresses it: "That statesman must be short-sighted, indeed, who imagines that what makes property insecure can really make society prosperous."

Judgment reversed and cause remanded.