## HARRIET ANDERSON, D. L. ROSS, JOHN D. HOLLINGSWORTH, AND HEZEKIAH S. HOLLINGSWORTH, SARAH E. DUNCAN, AND WILLIAM T. HOLLINGSWORTH, MINORS, BY THEIR GUARDIAN *ad litem*, J. D. HOLLINGSWORTH *v.* JOHN FISK, S. C. HASTINGS, W. J. DOBBINS, AND MASON WILSON, *et als.*

OVERRULING DEMURRER.—If demurrers are suffered to rest for three years, and the Court then overrules them for want of prosecution, the Supreme Court will not interfere with this exercise of discretion in the Court below.

JUDGMENT ROLL.—An order submitting a demurrer, where it is taken under advisement, forms no part of the judgment roll.

ORDER OVERRULING DEMURRER.—If there is nothing appearing in the order overruling a demurrer to show on what ground it was overruled, the presumption is that it was overruled on the merits.  If overruled for want of prosecution, that fact should be made to appear.

PLEA OF STATUTE OF LIMITATIONS.—If the plaintiff, in his complaint in ejectment, relies on a title derived from the Mexican Government and confirmed by the United States, without stating the time of confirmation, an answer which sets up as a defense the Statute of Limitations is good, without stating that the Mexican grant was finally confirmed within less than five years next before the commencement of the action.

IDEM.—In ejectment, a plea of the Statute of Limitations of two years, under the "Settlers' Act," is no defense.

SETOFF OF IMPROVEMENTS AGAINST RENTS.—In ejectment, the fact that the defendant has made permanent and valuable improvements, in good faith and under color of title, is no defense to the action; but if such fact is set up in the answer in such language as to contain the essential facts to justify a setoff of the value of improvements against rents, it will be treated as a good answer for that purpose, although no offer is made of such setoff.

ANSWER IN EJECTMENT.—An answer in ejectment, setting up title to only a portion of the demanded premises, must particularly describe the part to which title is claimed.  If it does not, no proofs will be admitted under it.

IDEM —An answer in ejectment, setting up a title in defendant to the demanded

79

premises and possession in him, should aver that such possession and title were adverse to the plaintiff's claim of title.

PLEA OF FORMER RECOVERY IN EJECTMENT.—A plea of former recovery in ejectment, as to a part of the demanded premises, should describe the land which was in contest in the former action, and such plea is bad if it is pleaded as a general defense to the whole action, and there are several plaintiffs, and the former recovery was against one only of the several.

JUDGMENT IN BAR BADLY PLEADED.—If, in ejectment, there are several defenses set up in the answer, some of which are insufficiently pleaded, and the defendants have a general verdict, and the record does not disclose on which one of the defenses the verdict was rendered, the judgment will be reversed.

PRIOR DEED TO BE FIRST RECORDED.—Under section forty-one of the Act concerning conveyances, a deed made prior to the passage of the Act, whether before the passage of the Act it was acknowledged or proved or n r, must be first recorded. in order to have priority over a subsequent deed from the same vendor to a bona fide purchaser for value, without notice.

LEGISLATURE OF 1850.—The Legislature of 1850 was vested with authority to pass laws.

LONG ACQUIESCENCE IN LAWS.—After the people have for years acquiesced in the validity of laws, and rights of property of great magnitude have grown up under them, nothing but the most imperative rules of law will induce Courts to hold that the Legislature which passed them had no power to legislate.

APPEAL from the District Court, Seventh Judicial District, Solano County.

The complaint averred that the plaintiffs had title in fee simple to the demanded premises, and that "said premises were a part of the Rancho Los Putas, commonly called the Vaca and Peña Grant, granted to said Vaca and Peña by the Mexican authorities, and finally confirmed to them by the United States Courts, and duly patented," etc.

The pleadings were not verified. The answers contained first, a general denial, and the several special defenses.

The plea of the Statute of Limitations was as follows: "For further answer these defendants say that plaintiffs ought not to have or maintain this action against the defendants, because they say that neither the plaintiffs or either of them, or their ancestor, predecessor or grantor, or either of them, was seized or possessed of the premises in question within five years before the commencement of this action."

The second special defense referred to in the opinion of the Court was pleaded, in substance, as follows:

And further answering, these defendants say that they and those under whom they claim entered into possession of the premises under a claim of title founded on a conveyance of the said premises, on the 21st day of August, A. D. 1850, and from thence hitherto have and still do continue to occupy a portion of the premises described in the complaint; that they own and possess a portion of the premises described in the complaint, under and by virtue of a conveyance from Vaca and Peña, the original grantees thereof from the Mexican Government, and that they and those under whom they claim were the *bona fide* purchasers from the original grantees of so much of the premises in complaint described as is possessed by them; that said purchases were made by them from said Vaca and Peña, the original grantees, for a valuable consideration, duly paid, and were made without notice or knowledge of any claim or title of the plaintiffs, or either of them, or of any other person, to the premises or any part thereof.

The plaintiff Harriet Anderson was the widow of W. Hollingsworth, who bought from Vaca and Peña, and died intestate, before the commencement of this action. The other defendants, except Ross, were his children by said Harriet.

The answer, setting up a former recovery, averred that on the 15th of October, 1858, in the District Court of the Seventh Judicial District in and for Solano County, an action was commenced by the defendant, William J. Dobbins, to recover the portion of the premises described in the complaint of which said Dobbins is in possession; and that said action was for the same cause of action described in the complaint, and was brought against the said Harriet Anderson; that due service of summons was had, and the cause became regularly at issue, and was fully tried, and such proceedings were had therein that the said William J. Dobbins, on the 2d day of February, 1860, duly recovered judgment for the possession of the premises described in the complaint; that such judgment remains in full force.

The plea of improvements made on the premises by defendants was as follows: "Defendants say that they and those under whom they claim have made permanent, lasting, and valuable improvements upon said premises so possessed by them, and that said improvements consist of houses, fruit trees, barns, and other valuable erections, and that the same are of great value, to wit: of the value of twenty thousand dollars, and that the same were made in good faith and under color of title."

The deed from Vaca, made in 1848, had two subscribing witnesses, and was afterwards proved and recorded.

The plaintiffs appealed.

The other facts are stated in the opinion of the Court.

*H. H. Hartley,* and *M. A. Wheaton,* for Appellants.

The deed from Vaca, made in 1848, transferred a legal and equitable title, and apart from the Recording Act, a subsequent sale by the same grantor is of no validity. (Act concerning Conveyances, Secs. 26 and 41.)

Prior to the passage of the Recording Act of 1850, conveyances took effect from their respective dates, and priority of conveyance necessarily gave priority of right. At common law the registry of a deed imparted no notice, and the purchaser was put on inquiry in all cases. (*Messick* v. *Sunderland,* 6 Cal. 315.) And under the common law every deed took effect according to the priority of its date or delivery. (2 Greenl. Cruise, 846.) By a conveyance of the legal estate the grantor not only parted with his title and dominion over the land, but with the power to make a second conveyance of the same land so as to vest the second purchaser with any estate or right therein, as against the first purchaser, with or without notice. It is only by force of the Recording Act, section twenty-six, that a second conveyance of the same land from the same grantor has or can have any validity whatever.

In *Lessee of Maclay* v. *Work,* 5 Binney, 157, it was said by the Court:

"But it is very material that when Maclay obtained his deed there was no law obliging him to put it on record, and the same objection lies against every one who at that period purchased a legal estate and did not record his deed; for he left it in the power of the seller to defraud purchasers, without a possibility of notice. Yet it is certain that before the Recording Act of 1775 no man was obliged to record his deeds, and the purchaser was to look to the title at his peril. A very great defect it was, but so was the law."

(See, also, *Delancy* v. *McKeen*, 1 Wash. C. C. 527; *Keller* v. *Nutz*, 5 Serg. & R. 246; *Powers* v. *McFarran*, 2 Serg. & R. 44.)

The Spanish law recognized the possibility that the same vendor might undertake to sell the same property twice. (3 Siete Partidas, 334; Ley 50, tit. 5, part 5; Escriche Law Dic., "Venta," subd. 14.)

The Court erred in overruling the demurrers. The demurrers were interposed to the special defenses. In those demurrers we insist that the Statutes of Limitations are insufficiently pleaded, and that the other matters constitute no defense to the action; and we think the demurrers well taken. (*Sharp* v. *Daughney*, 33 Cal. 505.) The two years' Statute of Limitations was long since held to be a part of the so called Settler's Act of 1856, and, with the balance of that Act, unconstitutional and not law.

*Williams & Thornton*, and *Wm. S. Wells*, for Respondents.

We contend that the demurrers were abandoned by the plaintiffs. They were filed on the 10th day of July, 1861, and were never called up for hearing. Nothing appears to have been done with regard to them until more than three years afterwards, viz: on the 21st of September, 1864, in granting a motion made by the attorney for defendants to place the cause on the calendar, the demurrers are overruled. No one appeared for plaintiffs to resist the motion; the demurrers were never submitted or argued, and they were in

this way dismissed properly by the Court, for want of prosecution. (*Beekman* v. *Frost*, 18 Johns. 559; *Palmer* v. *Lorillard*, 16 Johns. 348.) .

There was no controversy as to the date of the registration of the respective conveyances. The plaintiffs took the ground that the conveyance under which they claimed was not affected by the Act of 1850, concerning conveyances, but was controlled by the common law, as was the deed under which defendants made out their title, according to which law no registration was required, and the maxim *caveat emptor* applied in its broadest scope to the defendants, who were subsequent purchasers.

We contended in the Court below, as we do here, that this question had been settled by the adjudications of this Court, solemnly and deliberately rendered after fair and full argument, and that, under the principle of *stare decisis*, these judgments of this Court had made a rule of property, which would not and ought not to be disturbed. The cases referred to are: *Call* v. *Hastings*, 3 Cal, 179; *Stafford* v. *Lick*, 7 Cal. 474; *Clark* v. *Troy*, 20 Cal. 224. The same ruling seems to have been made in *Smith* v. *Brannan*, 13 Cal. 107–115.

By the Court, CROCKETT, J.:

This is an action in the usual form to recover a tract of land, which is a portion of a larger tract which was granted and has been finally confirmed and patented to Vaca and Peña. The plaintiffs claim title from Vaca under a deed made in 1848, and which was recorded in December, 1851, but without any acknowledgment or proof of its execution. The defendants claim title under two subsequent deeds, one from Vaca and the other from Peña, both of which, though subsequent in time to the plaintiffs' deed, were first recorded. Several answers were filed by the defendants, all of which, besides a general denial of the allegations of the complaint, contained special matters of defense, which were separately pleaded. To these special defenses separate demurrers were

filed by the plaintiffs in July, 1861. The record does not disclose what action, if any, was taken by the parties or the Court in respect to these demurrers prior to September 21st, 1864, on which day the following order was entered by the Court:

"In this cause, on motion of W. S. Wells, attorney for defendants, ordered that this cause be placed on the calendar, and the demurrer to defendants' answer be overruled."

There is nothing to inform us whether or not the demurrers had before then been submitted to the Court, nor whether they were overruled for want of prosecution or on the merits. Under these facts, the plaintiffs insist, on this appeal, that the Court erred in overruling the demurrers; whilst the defendants claim that from the long time which elapsed between the date of filing the demurrers and the order of the Court overruling them, they must be deemed to have been abandoned, and we should presume that the Court overruled them, not on the merits, but for want of prosecution. If it had appeared from the record that the Court overruled them for the latter reason, and not on the merits, and nothing further was disclosed, we should not have interfered with the exercise of its discretion in that respect by the Court. But, for aught that appears, the demurrers may before then have been duly submitted to the Court, and its decision not announced until the date of the order. If such were the facts, the order submitting them would have formed no part of the judgment roll, and could not properly have gone into the record, unless the fact was made to appear in some other proper manner. If they were in fact overruled for want of prosecution, it was incumbent on the defendants to see that it was so recited in the order, or it should be made affirmatively to appear in some other proper method. In the absence of such a showing, we cannot presume, on the facts disclosed by the record, that they were not overruled on the merits. It becomes necessary, therefore, to inquire whether these demurrers were properly overruled. That some of the special defenses set up in the answers were insufficient, is too

plain to admit of argument. It appears from the complaint that the plaintiffs claimed title under a Mexican grant duly confirmed and patented. To this complaint all the answer set up as a defense, "that neither the plaintiffs, or either of them, or their ancestor, predecessor, or grantor, or either of them, was seized or possessed of the premises in question within five years before the commencement of this action." Also, that the defendants are in possession under Vaca and Peña, the grantees of the Mexican Government, and that plaintiffs' cause of action did not accrue within two years next before the commencement of the action. And as another defense, that the defendants are in possession of undefined portions of the premises in contest, under conveyances from Vaca and Peña, the original grantees, from whom the defendants purchased, in good faith, for a valuable consideration, without notice of the plaintiffs' claim. Also, that the defendants, in good faith and under color of title, have made permanent and valuable improvements on the premises severally occupied by them. This is apparently pleaded as a defense to the action, and is not limited on the face of the answers as a setoff against rents and profits. The answer of Dobbins, Glenn, Jewett, and Jones also attempts to set up a former recovery as against Mrs. Anderson, one of the plaintiffs.

The Statute of Limitations of five years is well pleaded. It is in the language of the statute in force at the time, and it was not incumbent on the defendants to rebut, in advance, the matter which the plaintiffs might set up in avoidance, to wit: that they held under a Mexican grant, finally confirmed within less than five years next before the commencement of the action. (*Richardson* v. *Williamson*, 24 Cal. 296; *Arrington* v. *Liscom*, 34 Cal. 365; *Vassault* v. *Seitz*, 31 Cal. 228.)

The demurrer to this defense was, therefore, properly overruled. But the limitation of two years, attempted to be set up in the answers, was no defense. This was founded on the Act generally known as the "Settlers' Act," (Stats. 1856, p. 54,) which has been decided to be unconstitutional and

void.  (*Billings* v. *Hall*, 7 Cal. 1; *Lathrop* v. *Mills*, 19 Cal. 513; *Pioche* v. *Paul*, 22 Cal. 105.)

The demurrer to this defense ought, therefore, to have been sustained.  If the fact that the defendants had made valuable and permanent improvements on the premises in good faith, under color of title, was intended to be pleaded as a defense to the action, it was, of course, a bad pleading; but though it contains no offer to offset the value of the improvements against rents, as it ought to have done, it nevertheless stated the essential facts to justify such offset; and we apprehend neither the counsel nor the jury were misled as to the real object of the averment, and that it was not treated at the trial as raising an issue of fact which, if found for the defendants, would defeat the action.  That part of the answers which sets up as a defense that the defendants were in possession of portions of the premises in contest under purchases made in good faith from the original grantees, without notice of the plaintiffs' claim, is defective in omitting to describe the particular portions of which they were thus in possession.  It is a familiar rule of pleading that a defendant setting up title to only a portion of the demanded premises, must specify the part he claims, in order to apprise his adversary of it, that he may bring his proofs understandingly.  But these answers do not either specify the quantity claimed nor describe it in any other manner.  On loose, vague allegations of this character no judgment could be entered, even though the plaintiffs conceded them to be true.  The second special defense contained in said answers is also insufficient for the same reason, and for the further reason that it does not aver an *adverse* claim or possession in the defendants.  The plea of former recovery by Dobbins and others is also badly pleaded in this, that it does not describe or specify the land which was in contest in the former action, and is pleaded as a general defense to the whole action, whereas it could in any event be a defense as against Mrs. Anderson only.  These answers were loosely

drawn, and lacked the precision which is indispensable to a good pleading. We think all the special defenses except the first were badly pleaded, and the Court erred in overruling the demurrers to them. But it is insisted by the defendants' counsel that the case was in fact tried on only one issue, to wit: on that which raised the question whether the defend. ants purchased with notice of the plaintiffs' claim. There is nothing, however, in the record to show that such was the fact. The statement on appeal does not purport to contain all the evidence; and for aught that is disclosed by this record, the general verdict for the defendants may have been founded on either one or more of the special defenses, which we hold to be insufficient. But if it be true, as alleged, that the only issue in fact contested was the issue of notice or no notice to the defendants, the result would be the same, inasmuch as we hold that defense to have been insufficiently pleaded. And if it be conceded that the same defense might have been pleaded under the general denial of the allegations of the complaint, it does not obviate the difficulty, inasmuch as it is impossible for us to determine from the record whether the verdict was founded on any defense which could have been proved under the general issue, or on one or more of the special defenses which were improperly submitted to the jury.

For these reasons the judgment must be reversed. But on the trial another question arose, which goes to the foundation of the plaintiffs' title, and we deem it best to dispose of it now. On the former hearing of this cause we held, on the authority of *Call* v. *Hastings*, 3 Cal. 179; *Stafford* v. *Lick*, 7 Cal. 479; and *Clark* v. *Troy*, 20 Cal. 223, that under section forty-one of the Act concerning conveyances, a deed made prior to the passage of that Act must be first recorded, in order to have priority over a subsequent deed from the same vendor to a *bona fide* purchaser for value without notice. That section is in the following words: "All conveyances of real estate heretofore made and acknowledged, or proved according to the laws in force at the time of making such

acknowledgment and proof, shall have the same force as evidence, and be recorded in the same manner and with like effect as conveyances executed and acknowledged in pursuance of this Act."

. The deed on which the plaintiffs rely was made in 1848, and of course, before the passage of the Act in question, but was not "acknowledged or proved" in any manner, and was not recorded until after the deed from the same grantor, under which the defendants deraign title, was duly recorded. The proposition of the plaintiffs is, that the section we have quoted, by its terms applies only to deeds made before the passage of the Act, *which had been acknowledged or proved according to the laws in force at the time*, and has no application to deeds *not* acknowledged or proved, which, it is claimed, remained wholly unaffected by that section. If the plaintiffs' deed had been acknowledged or proved according to the laws in force when it was made, it is evident, on the authority of the cases we have quoted, that in order to prevail over a subsequent deed from the same grantor to a *bona fide* purchaser for value, without notice, it must have been the first recorded. Is its *status* improved by the fact that it was neither acknowledged or proved? Can it be possible that in enacting the section we have quoted, the Legislature intended to say that a deed made before that time not acknowledged or proved, or in any manner authenticated, need not be recorded, but should, nevertheless, prevail over a subsequent deed from the same grantor to a *bona fide* purchaser for value without notice; whereas, if it had been duly proved or acknowledged according to the laws in force at the time, the conditions would be reversed, and it should *not* prevail over the subsequent deed to an innocent purchaser for value, unless it was the first recorded. We can impute no such absurdity to the Legislature. To give greater effect to a deed, simply because it was in no manner authenticated, would be not only to disregard but to reverse the policy of all enlightened governments, in requiring the muniments of title to real estate to be authenticated in some form. We

admit that the section under discussion is not aptly worded, and as was said by this Court in *Clark* v. *Troy, supra,* "in fact by a strict reading of section forty-one, a conveyance that may have been made before the passage of that Act, but which had not been acknowledged or proved or recorded, could not be put on record, after the passage of that Act, by virtue of that section alone." But we will not resort to a " strict reading," the result of which would be to impute to the Legislature a gross absurdity. On the contrary, we will construe the statute liberally, so as to carry into effect the manifest intention of the Legislature. The design of this section was to require prior conveyances to be recorded, in order that subsequent purchasers might have the means of ascertaining the condition of the title; and it is true that in accomplishing this result the Legislature has employed a phraseology somewhat inaccurate, and which does not very aptly express the idea intended to be conveyed. But that it was not intended to exclude from record instruments before then made, which were not " acknowledged or proved, according to the laws in force at the time of making such acknowledgment and proof," we think must be obvious, when we refer to the condition of affairs which had existed in California from the time of its conquest up to the passage of the Recording Act. On taking possession of the country we established no civil law for its government, and though the former laws and usages nominally remained in force, our people were in a great measure ignorant, not only of their forms of proceedings, but of the principles of the Mexican system; and the result was that all legal forms and processes quickly became a rude conglomerate of civil and common law proceedings, retaining some of the features of each, but chiefly remarkable as embodying the well defined principles of neither. In the meantime, the discovery of gold in California had stimulated enterprise and given rise to large transactions in real estate and otherwise. There were numerous conveyances often made in the loosest manner; sometimes acknowledged before an Alcalde, sometimes before a

notary appointed by a military Governor, sometimes with subscribing witnesses, and often without either acknowledgment, witnesses, or any proof of execution. It this condition the first Legislature found the country in 1850, and at once perceived the absolute necessity of establishing a system of registration of titles to real estate. It was not difficult to devise a proper system for future transactions, but it was well known that large estates were held under conveyances made in the loose manner we have indicated, and that a great majority of them had not been "acknowledged or proved according to the laws in force at the time of making such acknowledgment and proof." Practically, no laws were in force regulating that subject. Under the Mexican system, nominally in force, conveyances were made before an "Escribano," who kept the original document and delivered to the parties certified copies of it. But this mode of conveyance was discontinued after the conquest, and the common law forms were adopted. If it was the intention of the Legislature, by section forty-one of the Recording Act, to exclude from record all deeds before then made which were not acknowledged or proved according to the laws in force at the time, there were but few conveyances (so far as we are advised, none) which would come within the scope of the Act; and titles would have been left in a state of inextricable confusion. If none but deeds acknowledged or proved according to the laws in force at the time were entitled to record under that section, it would be the duty of the Recorder, in every such case, before recording the deed, to enter upon an inquiry as to what the laws were which were in force at the particular time; and, we apprehend, that with the aid of the best legal advice he would find it a problem very difficult of solution. We think it was not intended to impose any such impracticable duties on the Recorder; and notwithstanding the inapt words employed for that purpose, that it was the intention of the Legislature to admit to record all deeds before then made in any mode sufficient to pass an estate in lands, whether they were proved or acknowledged or not.

The danger suggested by the plaintiffs' counsel, that under such a construction it would be practicable for fraudulent persons to put on record forged deeds, and, after destroying the originals, rely on certified copies as evidence of title, is one which could not be wholly avoided under any system of registration. The same fraud which forges the deed could forge a proper acknowledgment, and, after recording, destroy the originals. There is the same danger of fraud in both cases, except that in the latter case the means of detection would be somewhat enlarged. It is impossible to devise a system which is an absolute security against frauds; and in the condition of affairs which prevailed here in 1850, the Legislature doubtless deemed it better to take the risk of the danger which the counsel suggests, than to leave the titles to real estate in an embarrassed condition for lack of registration.

Another point made by counsel is, that the Legislature of 1850, which passed the Recording Act, was a usurping body, having no authority to pass laws, and consequently that their acts have not the force of law. If this proposition be correct, it applies with equal force to the great body of general statutes still in force.

After the lapse of eighteen years, during all which period the people, the bar and the bench have acquiesced in the validity of the acts of that legislative body; and after rights of property of vast magnitude have vested, on the faith that these were valid and binding laws, none but the plainest and most imperative rules of law, which would leave us no other alternative consistent with our sense of duty, could induce us to uphold the plaintiffs' proposition, and thereby inaugurate not only the greatest possible perplexity of titles, but a state of confusion in other respects which would prove most calamitous to the people. Suffice it to say, the plaintiffs' counsel has failed to convince us that there is any principle of law which demands or would justify such a decision.

Judgment and order reversed, and cause remanded for a

new trial, with leave to the defendants to amend their answers if they shall elect to do so.