## TOUCHARD et al. v. KEYES.

TENANTS in common can unite in this State by statute in an action for the possession of real property, and the executor of a deceased tenant in common can unite with the cotenants of his testator in such actions.

The books of record of deeds, mortgages, and other instruments, kept by Alcaldes previous to the organization of the State Government, which were transferred to the custody of the County Recorder by the Act of April 13th, 1850, entitled "An Act concerning the Transfer of certain Records, Conveyances, and Papers," have been placed by the twenty-first section of the Act of March 26th, 1851, entitled "An Act concerning County Recorders," upon a footing with other records kept by the County Recorders; and certified copies of instruments found therein are admissible in evidence under the same circumstances as are certified copies of records made by the Recorders themselves—namely, upon proof of the loss or the inability of the party to produce the originals.

Per NORTON, J., dissenting. — The twenty-first section of the Act concerning County Recorders of March 26th, 1851, applies only to such records as are by that act required to be kept in the Recorder's office. It has no application to the records of Alcaldes which by a previous act had been transferred to the custody of the Recorders, and a copy from such records is not admissible upon the certificate of the Recorder.

APPEAL from the Seventh Judicial District.

This was an action of ejectment to recover certain real estate situated in Sonoma County. The plaintiffs claimed under a Mexican grant issued by Pio Pico, Governor of California, to Juan Padilla, on the twelfth of June, 1846, of a tract of land known as "Bolsa de Tomales," containing five square leagues. On the trial the plaintiffs attempted to trace title from the grantee, Padilla, by sundry mesne conveyances. Of these conveyances the original of one could not be produced, and the plaintiffs offered a certified copy of the conveyance found in the book of records of deeds and other instruments kept by the Alcalde of the district of Sonoma in 1849, the certificate being made by the Recorder of the county of Sonoma, in whose office the original records are deposited. To the conveyance, as it appears on record, is attached a certificate of acknowledgment of the grantors before the Alcalde of the district. All other material facts are stated in the opinion of the Court.

*John W. Dwinelle* and *H. P. Hepburn*, for Appellants.

The Court below erred in excluding the certified copy of the conveyance from the records of deeds kept by the Alcalde of the district of Sonoma.

1. The conveyance was executed by parties whose very names indicate a Mexico-Californian origin, partly in the Spanish language, and possesses all the requisites of a conveyance under the Mexican law, celebrated before a Mexico-American Alcalde, before the introduction of American laws. It must, therefore, be presumed that the paper found inscribed in the Alcalde's records was an original and authentic instrument, and not a recorded copy. Therefore, by the Act concerning Conveyances, passed April 16th, 1850, sections forty-one and forty-two, this conveyance was to be proved according to the laws in force previous to April 16th, 1850, and this mode of proof, under the Mexican laws, was not by producing the original, but by obtaining a certified *traslado*, or copy, from the acting *escribano*. In addition to this, this Court has often decided that the records of the Recorder's office must not be removed from one

county to another for the purpose of being used in evidence, and thus exposed to casualties, and that exemplifications of them by the proper officer are evidence, on general principles, and in the absence of any legislation on the subject. (*Gregory* v. *McPherson*, 13 Cal. 574, and authorities there cited.) These latter decisions alone would authorize the introduction of secondary evidence of the Alcalde's records, if they have the character of original instruments.

2. By the laws of Mexico all conveyances must be executed before and recorded by an *escribano*, who thus acted as Commissioner of Deeds and Recorder of Conveyances. (Law 29, lib. 8, tit. 13 of the Leyes de las Indias; Arrillaja's Decretos for 1838, 421, cited in *Hoen* v. *Simmons*, 1 Cal. 122.) But where there were no official *escribanos*, the Judge of the First Instance acted as such. (*Panaud* v. *Jones*, Id. 488.) And where there was no Judge of First Instance the local Alcalde acted as such. (*Mena* v. *Le Roy*, Id. 216.)

By an Act of the Mexican Congress of July 15th, 1839, it was provided, that in cases of absolute vacancy, or of the sickness, death, or any legal impediment whatsoever, of the Judges of First Instance, their places shall be supplied by the Alcaldes, etc. (Minutes of the proceedings of the Legislative Assembly of San Francisco, etc., p. 295.)

On Nov. 14th, 1843, Gov. Micheltorena decreed as follows:

\* \* \* \* \* \* \*

" 1st. There shall be held at Monterey and the city of Los Angeles, as chief towns of the district, elections for Ayuntamientos, composed each of a first and second Alcalde, four Regidores and one Syndico.

" 2d. In the pueblos of San Diego, Santa Barbara, San Juan, Villa de Branciforte, Pueblo de San José, San Francisco, and Sonoma, elections will be held of two Alcaldes of first and second nomination.

\* \* \* \* \* \* \*

" 4th. The first Alcaldes of which these provisions speak will perform the duties which belong to Judges of First Instance, in conformity with the decree of July 15th, 1839, [lastly above cited]

and they will also take charge of the Prefectures of their respective districts."

So that we have not only the general law cited above in *Mena* v. *Le Roy*, (1 Cal. 216) but a special decree giving the First Alcalde of Sonoma the functions of Judge of First Instance. Alcalde, without any other designation, used as a designation of office by one acting as Judge of First Instance, will be presumed to be First Alcalde.

3. When the Americans came into the country after the conquest and brought in their customs, they introduced the custom of treating the Alcalde as a notary in two respects : 1st, as a commissioner of deeds; and 2d, as a recording officer.  This custom was sufficient to change the law.  ( *Von Schmidt* v. *Huntington*, 1 Cal. 64 ; *Reynolds* v. *West*, Id. 326; *Panaud* v. *Jones*, Id. 500; *Tevis* v. *Pitcher*, 10 Id. 477.)  The doctrine of these cases was fully approved in *Adams* v. *Norris* (23 How. 353).

That this custom was universal and recognized by the highest authority, appears from the fact that on September 20th, 1849, " The Superior Judicial Tribunal of California " adopted a tariff of fees for judiciary [judicial?] officers.  For Alcaldes, as such, no fees for recording conveyances were provided.  But for " Notaries Public," as recording officers, the following provisions were made : " For original acts of any kind, including recording the same, for every hundred words, one dollar.  *  *  For making copies of all official documents, for every hundred words, one dollar.  *  *  For certificate of mortgage for every hundred words, fifty cents ; with seal, one dollar.  For cancellation of mortgages, five dollars.  For recording a deed of [or ?] mortgage, for every hundred words, one dollar.  For recording all other papers, for every hundred words, fifty cents."

These acts are all descriptive of those performed by the Alcalde as *ex officio* notary under the Mexico-Californian laws and customs, and such as were performed by no other notaries in the country. The " Tariff of Fees," therefore, shows not only a custom amounting to law, but also its recognition by the highest judicial tribunal then known to the laws of California.

4. The Legislature of 1850 considered these Alcalde records of

value. By an act passed February 28th, 1850, entitled " An Act to supersede certain Courts and to regulate Appeals therefrom to the Supreme Court," they were directed to " be delivered to the County Clerk of the county which the District Judge may direct, to be by him kept and disposed of according to law." (Laws of 1850, chap. 23, sec. 39.)

By another act passed April 13th, 1850, entitled " An Act concerning the Transfer of certain Records, Conveyances, and Papers," the County Clerk was directed to transfer such books, within ten days after he received them, to the Recorder of his county, who was directed to " keep and preserve " the same " as part of his records." (Laws of 1850, chap. 93, secs. 1 and 2.) And by the " Act concerning County Recorders," passed March 26th, 1851, it is provided in the twenty-first section, that " copies of all papers duly filed in the Recorder's office, and transcripts from the books of records kept therein, certified by the Recorder to be full, true, and correct copies or transcripts, shall be received in all Courts, and in all actions and proceedings, with the like effect as the original instruments, papers, and notices, recorded or filed, could be if produced." (Laws of 1851, chap. 25, sec. 21.)

It cannot be doubted that, under sections forty-one and forty-two of the Act concerning Conveyances of 1850, this particular conveyance, if the original were produced, could be read in evidence, or even recorded under our existing laws. It is exceedingly formal and perfect.

*J. Clarke*, for Respondent.

The rejection of the certified copy of the conveyance from the Alcalde records by the Court below, counsel of appellants contend was error, and they argue (not very plausibly to be sure) that the pages from the book which the Recorder copied were not the recorded copy of an original instrument executed *inter partes*, viz. : of a deed of conveyance—but the very original writing itself, executed by the Alcalde, and pronouncing or declaring the sale to have been executed before him. The difference between these two things is apparent. Indeed, nothing could well be more unlike, either in form or in legal consequences. The usual commencement

Touchard *v.* Keyes.

of the one (the common law conveyance) is : " Know all men by these presents, that I," the vendor, etc. ; the other (the civil law, or Mexican act of sale) : " In the pueblo of Sonoma, before me, the Alcalde, appeared," so and so, " and the one said that he sold and the other that he received," etc.  In short, in the latter instrument the Alcalde, or other official, himself makes a record of the sale verbally consummated by the parties before him ; and this record is, like a Court judgment, the original thing, which should always remain in the office, copies only being delivered to the parties or others.

The learned counsel contend that what is now in this Alcalde's book, in the Recorder's office, (the copy of which they offered) is the original entry or record.  And the reason of this is obvious— for if such be the description of the instrument in question, it would be very strange law indeed which would not permit the certified copy to be used in evidence ; whereas, if the original document is or was in the hands of the vendee—if that which was placed upon the Alcalde's book is but a copy of this original document—then an entirely different set of questions would arise, viz. : 1st, whether the absence of the primary evidence (the deed itself) were sufficiently accounted for ; and 2d, whether the alleged copy was the proper secondary evidence of its contents.

The arguments of the learned counsel to show that the document in question was the original " celebration " of the sale before the official, and not the recorded copy of an ordinary common law deed, are curious.  First they say : " The names of the parties indicate a Mexican origin."  But not choosing to dwell on this point, they proceed to say, that the instrument is written " partly in the Spanish language."  Unfortunately for them, upon looking at the instrument to see what part of it is in Spanish, we find conclusive evidence, in this very fact, that the writer of the document was not only a person conversant with English forms of conveyancing, but that he could not translate Spanish at all !  The Spanish part of the deed is merely the description of the land, copied, word for word, from the grant, and evidently because the draftsman thought he could not give the purport of it in English.

The instrument speaks for itself.  It is a deed, and nothing else.

It was "signed, sealed, and delivered." The vendors speak in it, not the Alcalde. The Alcalde himself, *anglice,* Mr. Fuller, who probably wrote the deed, added an ordinary certificate of acknowledgment on the back of the instrument—"the within instrument" are the words used, but which could not have been used if the original writing was that upon the pages of the book.

But counsel proceed to argue that, although compelled to yield the point in regard to the character of the instrument, still the certified copy of a copy was good evidence.

The object of section twenty-one of the Recording Act was to save the necessity of bringing into Court the Recorder's books and papers, and the certified copy is only evidence of the existence and correspondence of the thing copied.

But counsel contend, that even if the certified copy of the deed is not admissible under the statute, as being taken from a book, which, though without authority of law, so far as copying deeds by American Alcaldes, in 1849, was concerned, was, nevertheless, ordered by the Legislature to be removed to the Clerk's office, and thence to the Recorder's office, there to be "kept" by him, still it is good as "secondary evidence"—nay, that it is a "superior class" of secondary evidence; and they argue to show that it is an official record, and is, therefore, covered by section twenty-one, above referred to—that it was "regularly recorded," and, therefore, a copy would come in under the Act of 1857. Whereas, if there is anything that is at all apparent in this discussion, it is that Mr. Alcalde Fuller, in taking an acknowledgment of a common law deed, and copying it into a book in his office, was doing an unofficial act, and one to which no legislative sanction or effect has been subsequently imparted.

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

In this State, by statute, tenants in common can unite in an action for the possession of real property. (Laws of 1857, ch. 68.) And executors and administrators can maintain such actions in all cases where their testators or intestates could have maintained them, until the administration of the estates they represent is

Touchard *v.* Keyes.

closed, or the property is distributed under decree of the Probate Court. (*Meeks* v. *Hahn*, 20 Cal. 620.) The executor of Matthey and the tenants in common with him are, therefore, properly joined as plaintiffs.

The present action is for the possession of real estate situated in the county of Marin, and the plaintiffs base their right to a recovery upon a grant issued by Pio Pico, Governor of the Department of California, to Juan Padilla, in June, 1846, and sundry mesne conveyances from the grantee. Of these mesne conveyances through which the plaintiffs trace title, one executed in November, 1849, could not be produced. Its execution was shown, and proof was made of diligent but unsuccessful search for it by persons with whom and in places where it would probably be found if in existence. The plaintiffs thereupon offered a certified copy of the conveyance from the records of deeds kept by the Alcalde of the district of Sonoma in 1849. This district embraced the territory comprising the present counties of Marin and Sonoma, and adjoining counties. The records are now in the custody of the Recorder of Sonoma County, and the certificate to the copy offered was made by him. Upon objection of the defendant, the certified copy was excluded by the Court. The specific ground of the objection is not stated in the transcript before us, but we infer from the argument of counsel that it was this: that the statute had not legalized the records, or authorized copies of instruments found in them to be received in evidence ; in other words, that the records were mere private entries of the Alcalde, not made in pursuance of any law, or custom having the force of law, or since recognized by any law, and, consequently, had not the dignity of other records in the Recorder's office. If this be the specific point of objection, and no other is suggested by counsel, it was not well taken. In the settlement of California by citizens of the United States, after the conquest, and until the organization of the State Government, and the establishment of Recorders' offices in the different counties, the local Alcaldes were the only officers (with one or two exceptions) who kept any records of conveyances. Whether there was any authority by law to keep such records it is not necessary to inquire. Either from supposed authority of existing law or general consent,

every one resorted to them for the registration of his deeds, and also for examination as to titles held by others.    And the Legislature, at its first session under the Constitution, recognized, by repeated acts, the records of deeds and other instruments kept by them as public records which were subject to its control.    On the twenty-eighth of February, 1850, it passed an act providing that " *Books of records* of deeds, mortgages, powers of attorney, and other instruments, *kept by* or in the possession of any Alcalde, Judge of the First Instance, Notary, or other officer, shall be delivered to the County Clerk of the county which the District Judge may direct, upon the election and qualification of each County Clerk, to be by him kept and disposed of according to law."    (Ch. 23, sec. 39.)    And on the thirteenth of April of the same year, it passed another act, requiring the County Clerk to transfer these " *books of records* of deeds, mortgages, powers of attorney, and other instruments," to the Recorder of his county within ten days after the same should come into his possession, and the County Recorder to keep and preserve them " *as part of his records.*"    (Ch. 93, secs. 1, 2.)    And by the twenty-first section of the Act of March, 1851, concerning County Recorders, the Legislature of the following year provided, that " copies of all papers duly filed in the Recorder's office, and transcripts from the *books of records kept therein,* certified by the Recorder to be full, true, and correct copies or transcripts, shall be received in all Courts, and in all actions and proceedings, with the like effect as the original instruments, papers, and notices, recorded or filed, could be if produced."    (Ch. 25, sec. 21.)    This section applies as much to copies from the Alcalde records, which by the Act of April 13th, 1850, are to be kept by the County Recorder as " part of his records," as it does to records made under the Act of 1851.    In adopting it, the Legislature was aware of the fact that the Alcalde records had been deposited in the offices of the different County Recorders, pursuant to the legislation of the previous year, and were kept by them as part of their records.    The Legislature was also aware that these Alcalde records were the only ones (with one or two exceptions) kept in the country during the period intervening between the conquest and the organization of the State Government, and that they

Touchard v. Keyes.

contained the only evidence which could, in the vast majority of cases, be produced of transfers of real property during that period. Indeed, it would not, perhaps, be going too far to say that in nine instances out of ten—owing to the migratory habits of the people at the time, the numerous fires which had swept over our principal cities and towns, and to circumstances peculiar to a new and unsettled country—it would be impossible for parties to produce the original instruments by which title to real estate was transferred during this period. The Legislature, therefore, placed the Alcalde records on a footing with other records kept by the County Recorder, and a certified copy of an instrument found therein is admissible under the same circumstances as are certified copies of records made by himself—upon proof of the loss of or the inability of the party to produce the original. The District Court, therefore, erred in excluding the certified copy offered in the present case. This error requires a reversal of the judgment, and renders it unnecessary to consider the other errors assigned by the appellants.

Judgment reversed and cause remanded for a new trial.

NORTON, J. dissenting.—I am unable to agree with the majority of the Court in the interpretation they give to section twenty-one of the Act concerning County Recorders, passed March 26th, 1851.

This act is a reënactment, with slight amendments, of the Act concerning County Recorders, passed April 4th, 1850. The Act of 1850 was passed before the passage of the act requiring the papers and books of the superseded Alcaldes' offices to be deposited in the office of the County Recorder. The Recorders' Act was adopted for the purpose of providing an office where certain instruments could be recorded and deposited. It prescribes that the Recorder shall procure suitable books (sec. 3) and shall record in them all deeds, etc., which shall have been proved or acknowledged according to law, and authorized to be recorded (sec. 10). Then by section twenty-one it provides, that copies of all papers duly filed in the Recorder's office, and transcripts from the books of records kept therein, certified by him, shall be presumptive evidence of the facts therein contained. The act had in previous sections provided that certain books should be provided and kept in the office, and

that deeds, etc., should be recorded in them, which should have been proved or acknowledged according to law.    The natural and obvious application of section twenty-one is, therefore, to give the weight of presumptive evidence to transcripts from the books which by that act are required to be kept in the Recorder's office.    There is no provision of the act that indicates that the Legislature contemplated that this section should apply to any books that by any future law might be authorized to be deposited with and safely kept and preserved by the Recorder.    The section as it stands and as applicable to books authorized by that act to be kept, is in consonance with other laws applicable to the registry system.    It does no violence to established principles of evidence.    It only gives the weight of evidence to deeds, etc., which have been proved or acknowledged according to law.    This section is modified in the law of 1851, but not in any particular affecting the question as to what instruments it is applicable.    The law of 1851, instead of making these transcripts presumptive evidence of their contents, authorizes them to be read in evidence with the like effect as the original instruments recorded might be if produced.    The respondent has argued that the object and proper application of section twenty-one, as contained in the Act of 1851, is only to obviate the necessity of producing the books in Court, giving to transcripts the same effect as evidence as the books, and thus making them only evidence of the fact that there is such a record, but not to prove the contents of the instrument recorded.    The language employed gives some color to this argument.    The books by being produced might be evidence of the fact of the existence of such a record in the office, and so establish constructive notice to subsequent purchasers, but a deed cannot be read in evidence by simply being produced and without proof of its execution.    Literally applied, section twenty-one, as it stands in the law of 1851, could have no practical effect.    The copy may be read with like effect as the original instrument recorded might be if produced.    But that instrument could not be read at all simply by being produced, and so the copy could not be read by simply being produced.    But the language of the section is too plain to allow us to give effect to the respondent's argument.    It is that the copy may be read with like

effect as the original instrument recorded, not the original record, could be if produced.    But this language gives great weight to the argument that section twenty-one should and can only be applied to copies of instruments authorized by the act to be recorded.    By that act no instrument can be recorded unless it has been proved or acknowledged according to law.    When such original instrument "is produced," it may be read in evidence without further proof. It cannot be read without proof, but it is accompanied with sufficient evidence of its due execution.    The record consists not only of the instrument, but also of the certificate of proof or acknowledgment, and when a copy from the record is produced it, like the original, is accompanied with sufficient evidence of the due execution of the original.    It may therefore be read without violence to the established laws of evidence.

By the interpretation of this section claimed by the appellants, and now given to it by the majority of the Court, a copy of any instrument found in any book transferred from the old Alcaldes' offices to the Recorder's office, may be read in evidence without any proof whatever that it was ever executed.    It is true that the instrument, a copy of which was offered in this case, has a certificate of acknowledgment before an Alcalde.    But this section does not require any such evidence.    The simple fact that the instrument is found on the Alcalde's records is all that is necessary, according to this view, to authorize the copy to be read.    If it is now decided that this copy is evidence, there will be no ground upon which any copy from these books can hereafter be excluded.    There being no law in force upon the subject at the time these records were made, we cannot assume that any acknowledgment or proof was requisite to enable deeds to be copied into these books ; and if the Judges could be allowed to act upon their personal knowledge, we should be authorized to say that it was common for the Alcalde to copy into his books any instrument for which he was paid the usual fee.    If any attempt should be made hereafter to restrict the operation of this section so as only to allow copies to be read of conveyances which should have been acknowledged or proved, it would be impracticable to do so, because this species of evidence of execution is entirely the creature of statute, and there was no stat-

ute then in force authorizing it.   It has been said that there might have been a custom upon the subject amounting to law.   If so, the custom would have to be proved.   There was no such custom of which this Court has judicial knowledge.   In fact there is no prob- ability that there was any custom allowing instruments to be read in evidence on a certificate of proof before an officer.   A practice grew up to record deeds with the Alcalde, proved or not proved, from an opinion that the record would serve as notice of the party's title, but this was quite different from any custom to read deeds in evidence upon a certificate of proof before any person holding any office.

The suggestion that it is necessary to apply section twenty-one of the Act of 1851 to all records in the Recorder's office, in order to authorize copies of deeds recorded under the Act of 1850 to be given in evidence, does not seem to me of weight, because the second act is but a reënactment of the first, and a mere continua- tion of the registry system; but also because, if the section were entirely out of the act, it would be of no consequence, as the oper- ative law under which these copies are given in evidence is con- tained in the act concerning conveyances and a law upon the sub- ject passed in 1857.

But if it were necessary to make a merely literal application of this section, and to allow to be read in evidence a copy from any book that by any law is authorized to be kept by the Recorder as a part of his records, then, by the same rule of literal application, copies from the old Alcaldes' books cannot be given in evidence. Literally, the copy can be read only with like effect as the original could be if produced.   But no law authorizes a deed to be read on an Alcalde's certificate of acknowledgment; and so, upon even this restricted view of the application of section twenty-first, the copy offered in evidence was properly excluded.

And if this literal interpretation is to be given to the section, there is another objection to the proof offered.   A copy can be read only of an instrument "recorded."   It is settled that an instrument copied into the Recorder's books without having been duly proved or acknowledged is not thereby a "recorded" instrument.   If such an instrument should be found on the Recorder's books, kept under

the act, a copy could not be read in evidence, although the book in which it was copied would properly be called and kept as part of the Recorder's records. I can see no sufficient reason for holding that the law, providing that the Recorder should "keep and preserve as part of his records" certain books transferred from an Alcalde's office, intends and means that any instrument found copied into them shall be deemed to be "recorded" in that sense which would authorize a copy to be read in evidence under section twenty-one of the Recorders' Act of 1850, when a copy of such an instrument found in the books kept under the act itself could not be read in evidence, and still less that the amendment made to section twenty-one, in the year after, should have the effect to authorize such a copy from the Alcalde's books to be read in evidence, when a copy of an instrument not duly "recorded," found in the books kept under the act, could not be read.

As a new trial is ordered on this point, it is of no importance in this case to examine any other objections, and I have only given this dissenting opinion upon the point because the question is of general application and of more than ordinary importance.