HENRIETTA M. GARWOOD, RESPONDENT, v. WILLIAM HASTINGS, APPELLANT.

PLEADING.—The allegation in a complaint that, the plaintiff "*is the owner*" of the land sued for, is, in substance, an allegation of seizin in fee, in "ordinary," instead of in technical language.

DESCRIPTION OF LAND.—A description is not defective which calls for a lot of land one hundred varas square, bounded on three sides by well known streets, upon the plat of a city laid out, surveyed and platted, and on the other by the unsurveyed lands.

ALCALDES' RECORDS OF GRANTS, ETC.—Certified copies of instruments found in the books of records of deeds, etc., kept by Alcaldes, and which have been transferred to the custody of County Recorders, are admissible in evidence under the same circumstances as are certified copies of records made by the Recorders themselves. SPRAGUE, J., dissenting.

Opinion of the Court—Sawyer, C. J.

BOOK "K" OF DEEDS, IN OFFICE OF RECORDER OF SAN FRANCISCO.—Certified copies of instruments recorded in Book "K" of Deeds, in the office of the Recorder for the City and County of San Francisco, are admissible in evidence without proof of the execution of the originals. SPRAGUE, J., dissenting.

*Touchard* v. *Keyes* (21 Cal. 203), and *Anderson* v. *Fisk* (36 Cal. 625), commented on, and approved.

NAME OF GRANTEE IN CONVEYANCE.—It is sufficient, in a conveyance, if the grantee is denominated by the customary name at the time of the execution of the instrument—no matter what might be the true name.

TAX SALES.—A party against whom a tax is levied cannot obtain any title to property, by purchase of it at a sale for the payment of the taxes which he should have discharged.

ASSESSMENT FOR TAXES.—An assessment is void if there be no valuation.

PRESUMPTION OF DEATH.—That a person has not been heard of for seventeen years by his wife, is sufficient to justify a presumption of his death.

*Per* SPRAGUE, J., dissenting:

RULE OF EVIDENCE.—The best evidence of which the case, in its nature, is susceptible, must always be produced.

IDEM—ALCALDE GRANTS.—The best evidence of an Alcalde grant is the official public record of the acts of the Alcalde by whom the grant was made. In the absence of this, and of all secondary proof to establish the genuineness of the grant, a copy of a record of a grant made in a book seen in the office of an Alcalde, is not admissible in proof—more especially, if the grant claimed was made nine months before the record, and it be not shown that the Alcalde in whose charge it was seen continued in office until the date of the record.

This case distinguished from *Donner* v. *Palmer* (31 Cal. 508), and *Touchard* v. *Keyes* (21 Cal. 209.)

PRESUMPTION OF DEATH FROM ABSENCE OF INTELLIGENCE.—The testimony of the wife that she had not heard from her husband for seventeen years, being herself, all the time, absent from his last known place of residence, living under various assumed names, and at no time bearing that of her husband, thereby suggesting the probability that she had endeavored to conceal herself from her husband, is not sufficient to justify the presumption of his death.

APPEAL from the District Court of the Fourth District, City and County of San Francisco.

The case is stated in the opinion.

*Earl Bartlett,* for Appellant.

*J. McM. Shafter* and *J. M. Seawell,* for Respondent.

SAWYER, C. J., delivered the opinion of the Court:

The complaint alleges that the plaintiff "is the owner, and entitled to the possession of the land" described; that "defendant is in possession of said lot of land, without any

right or title thereto, and against the will and without the consent of said plaintiff;" that said defendant "wrongfully withholds the possession of said lot of land from said plaintiff," and prays judgment for the possession, etc. The complaint is sufficient. The allegation that the plaintiff "*is the owner*" of the land, is, in substance, an allegation of seizin in fee, in "*ordinary,*" instead of technical language, as is permitted by Section 39 of the Practice Act. *Payne* v. *Treadwell* (16 Cal. 242, 244), determines the point.

After proving that Book "K" of Deeds, now in the Recorder's office, was kept in the office of Alcalde Geary; that, after the organization of the State Government it was transferred from said office to the office of the County Clerk, and thence to the office of the County Recorder, where it still remains, the plaintiff offered a certified copy from page 241 of said Book "K," of what purported to be a petition to, and grant of, a lot by Alcalde Leavenworth, to Joseph W. Osborn, dated June 30, 1849, of one hundred varas square, bounded on the north by Washington street, east by Jones street, south by Clay street, and west by unsurveyed lands, which purports to have been recorded March 21, 1850; said lot including *locus in quo.* It was, also, proved to the satisfaction of the Court that plaintiff had not the custody or control of, and was unable to produce the original. Defendant objected to the introduction of this evidence on the ground that there was no description of the land sufficient to identify it; and because there was no proof of the execution of such grants, nor of the loss of the original, or that it was genuine. The objection was overruled, the certified copy admitted, and defendant excepted. This ruling is claimed to be erroneous.

The description is not defective on its face. The land is a hundred-vara lot, bounded on three sides by well known streets upon the plat of a city laid out, surveyed and platted, and on the other by the unsurveyed lands. It was only necessary to find the unsurveyed land, and apply the description to the lot, to find it. It certainly does not appear on the face of the deed that the description would not fit a lot one hundred varas square.

The other, however, is the main objection, and this point is settled against the appellant by the case of *Touchard* v. *Keyes* (21 Cal. 203.) Book "K" of Deeds was shown to be a "*book of records,* kept" in the County Recorder's office, within the meaning of the several provisions of the statutes cited in the opinion in that case (p. 310.) And the twenty-first section of the Act of 1851, concerning County Recorders, provides that "copies of all papers duly filed in the Recorder's office, and *transcripts from the books of records kept therein,* certified by the Recorder to be full, true and correct copies, or transcripts, shall be received in all Courts, and in all proceedings, with the like effect as the original instruments, papers and notices recorded or filed could be if produced." (Statutes 1851, 204.) The Alcalde's record being "books of records kept therein," it was held that: "This applies as much to copies from the Alcalde's records, which, by the Act of April 13, 1850, are to be kept by the County Recorder as '*part of his records,*' as it does to records *made under the Act of* 1851." (21 Cal. 210.) And further, that "the Legislature, therefore, placed the Alcalde's records on a footing with other records kept by the County Recorder; and a certified copy of an instrument found therein is admissible, under the same circumstances, as are certified copies of records made by himself, upon proof of the loss of, or inability of the party to produce, the original." (*Ib.* 211.) It is true that in that case the execution of a conveyance was proved, but it does not appear from proofs, other than the record, that the conveyance proved to be executed was the identical one of which the record purported to be a copy. If this were proved, no force could be given to the copy as a record; for, after showing the loss of the original, and proving its execution, and that the record is a copy of the original, it would be admissible as secondary evidence of the contents of the original, independent of its being a record. But it was introduced not as a proved copy, but as a record, to prove that it was a copy of the original, as well as the contents. But the real question determined, was, that the records of the Alcaldes, transferred, under the statutes, to the Recorder's office, to be kept therein as parts

of the public records of the office, stand upon precisely the
same footing, and are of equal dignity and value as instru-
ments of evidence, as records of the Recorder, regularly
made by him in pursuance of the provisions of the statutes
concerning that office and its records—that certified copies
from such Alcalde's records are admissible in evidence,
under the same circumstances and upon the same proofs, as
certified copies of other records regularly made in the office,
under the statutes. Such was the point decided by the
majority of the Court, and it was so understood by the dis-
senting Justice; and the objection taken by the latter was
mainly based upon the ground that, under the decision,
copies of instruments recorded in such records would be
admissible in evidence, without other proof of their authen-
ticity and genuineness, in the same manner, under the same
circumstances, and with the same effect, as transcripts of
deeds, duly acknowledged and recorded under the statute,
and that this would be a dangerous rule of evidence.
Says Mr. Justice Norton : "By the interpretation of this
section claimed by appellants, and now given to it by a
majority of the Court, a copy of any instrument found in
any book transferred from the old Alcalde's office to the
Recorder's office, may be read in evidence without any proof
whatever that it was ever executed. It is true that the
instrument, a copy of which was offered in this case, has a
certificate of acknowledgment before an Alcalde. But this
section does not require any such evidence. The simple
fact that the instrument is found on the Alcalde's records, is
all that is necessary, according to this view, to authorize the
copy to be read. If it is now decided that this copy is evi-
dence, there will be no ground upon which any copy from
these books can hereafter be excluded. There being no laws
in force upon the subject at the time these records were
made, we cannot assume that any acknowledgment or proof
was requisite to enable deeds to be copied into their books.
*   *   * If any attempt should be made hereafter to restrict
the operation of this section, so as only to allow copies to be
made of conveyances which should have been acknowledged
or proved, it would be impracticable to do so, *because this*

*species of evidence is entirely the creature of statute, and there was no statute then in force authorizing it."* (*Ib.* 213.) There can be no doubt as to the point decided in that case. The reasons which are supposed to have operated upon the minds of the Legislature in adopting the provisions respecting the Alcalde's records, are stated in the opinion of the Court in that case. We have, also, had occasion to discuss cognate questions in the recent case of *Anderson* v. *Fisk* (36 Cal. 625), in which much is said relevant to the policy and safety of the rule. In that case we held that, under the forty-first section of the Act concerning conveyances, "it was the intention of the Legislature to admit to record all deeds before then made in *any mode* sufficient to pass an estate in lands, *whether they were proved or acknowledged or not."* We showed that since there were, anterior to that time, no laws as to the proof and acknowledgment of conveyances, it could not have been the intention of the Legislature to limit the record of deeds before that time made to deeds "acknowledged or proved," according to any laws in force at the time the deeds were made. But it is expressly provided that all conveyances authorized to be recorded at all under that section, "shall have the same force as evidence, and be *recorded in the same manner, and with like effect, as conveyances executed and acknowledged in pursuance of this Act."* If it was lawful, under this section, to record conveyances executed before the passage of the Act, without having been first proved or acknowledged—and in *Anderson* v. *Fisk* we held that it was —then, when they *were* recorded under the provisions of said section, the record thereof became of the same dignity as the records of other deeds regularly recorded, for the statutes—especially said Sections 41 and 21 of the Acts before cited—make no distinction. There certainly could be no more danger in putting the official records of the Alcaldes, made in accordance with the then usage of the country, at a time when it could not be known that they would ever, under certain restrictions, be made by statute *prima facie* evidence of the genuineness of the instruments therein recorded, upon the same footing with the records of deeds subsequently regularly executed, acknowledged and

recorded in pursuance of the statutes, than the records of deeds before executed and, without being proved or acknowledged, copied into the records of the Recorders after the adoption of the statute in pursuance of the provisions of Section 41 of the Act concerning conveyances. The only difference between the two classes of conveyance would be the time when they were copied into the records, one being copied into the records of the Alcaldes *before,* and the other by the Recorders *after,* the passage of the statute. The instruments themselves would be alike. The argument in *Anderson* v. *Fisk,* as to the danger of the rule adopted, is equally applicable to this case, and it is sufficient to refer to without repeating it here.

The Alcaldes' records, therefore, being of equal dignity, and standing upon the same footing with those regularly made by the Recorders under the statutes of the State, it only becomes necessary to ascertain under what circumstances certified copies of the latter are admissible, and their force as evidence when admitted to ascertain when certified copies of the former are admissible, and their value as evidence. Certified copies of the records of deeds, regularly recorded under the statute, are admissible in evidence upon satisfactory proof of the loss or inability of the party to produce the original. In this case the plaintiff produced to the Court satisfactory proof of the inability of the plaintiff to produce the original. The certified copy from Book K was, therefore, properly admitted.

There is nothing in the point that the deed from O'Brien to Eliza S. Henderson does not contain the names of the parties. It does contain names of both grantor and grantee. The land was conveyed to the grantee, whatever her real name was, by the name of Eliza S. Henderson, and that was the name she was known and went by in San Francisco at the time—whether properly or not, does not matter. She was the party intended as the grantee. She says her name was Eliza Henderson at that time. At all events, she passed by that name, and the title passed to the grantee by that name. Eliza was her real Christian name, and that is the

one which, at common law, is alone recognized as the legal name.

Eliza Kinsey, the party to whom the conveyance had been made by the name of Eliza S. Henderson, was examined as a witness. On cross-examination, after stating that she had been married in 1848, in New Jersey, to Ebenezer Sooy, testified as follows : "Do not know whether he (Sooy) is dead or alive ; I have not heard of or seen him for at least seventeen years ; I did not continue to be his wife ; he left this State for the Sandwich Islands about 1850 ; I have been married since to George W. Wilmot, about fourteen years ago ; he was killed in a mining claim about four years after ; since my second husband's death I have married Kerst Kinsey, who is now my husband."

We think we should not be justified in setting aside the finding by the District Court of the death of Sooy, the first husband of the witness, based upon this evidence. The Court was at liberty to find the death of Sooy upon this evidence, under the rule as stated in 2 Greenl. on Evidence, Sec. 278 *f.* and *h. Winship* v. *Connor,* (42 N. H. 344), is also in point, and is certainly a case no stronger than this for sustaining the finding. This case is also within the principle of Sec. 278, *h.* 2 Greenl. Ev. not requiring the most weighty and persuasive circumstances to justify the finding. The death of Sooy being found, it can make no difference in this case whether the property was common or the separate property of the wife, for if common property, after the death of the husband the title to one half at least was in the surviving wife, and this is sufficient to enable the grantee of that half, as tenant in common, to recover the whole premises as against a mere trespasser.

The burden of showing a five years' adverse possession was on the defendant. The plaintiff having shown title, the possession is presumed to follow the title.

No title was derived to Jessie Richardson under the tax sale. The tax was levied against her, and it was her duty to pay it. (*McMinn* v. *Whelan,* 27 Cal. 300 ; *Kelsey* v. *Abbot,* 13 Cal. 609 ; *Moss* v. *Shear,* 25 Cal. 38 ; *Coppinger* v. *Rice,* 33 Cal. 425.) Besides, the assessment was void, because there

was no valuation. (*People* v. *San Francisco Savings Union,* 31 Cal. 132.) And again, it is, at best, extremely doubtful whether the assessment is not also void for want of a description sufficiently certain to identify the land—the point of beginning not being stated. (*Keene* v. *Cannovan,* 21 Cal. 292.)

There was no error in denying a new trial on the ground of newly discovered evidence, on the very unsatisfactory affidavits presented as the basis of the motion on that ground.

Judgment and order denying a new trial affirmed.

SPRAGUE, J., delivered the following dissenting opinion:

Appellant's point, that the complaint does not state facts sufficient to constitute a cause of action is not tenable. In an action for the recovery of the possession of real estate, an allegation in the complaint that plaintiff *is the owner* of the demanded premises is equivalent to, and in substance the same, as an allegation that he is seized of an estate in fee in such premises, and is an assertion of the highest grade of legal title in the plaintiff, "in ordinary language," in place of formal, technical terms. This answers the demands of our civil code, and from the allegation of ownership the right of immediate possession follows as a conclusion of law. Such an allegation, followed by an allegation that defendant is in possession of the premises, and withholds the same from the plaintiff, if sustained by the evidence, is sufficient to entitle plaintiff to recover, without alleging or proving an ouster by defendant. (*Payne* v. *Treadwell,* 16 Cal. 244–5.)

On the trial, the defendant objected to the admission as evidence in behalf of plaintiff "of a certified copy of what purported to be a petition and grant of lot by Alcalde Leavenworth to Joseph W. Osborn, dated June 30, 1849, of one hundred varas square, bounded north by Washington street, east by Jones street, south by Clay street and west by unsurveyed lands, recorded in the office of the County Recorder in and for the City and County of San Francisco, in Book K of Deeds, page 241, March 21, 1850," on the grounds then stated, and now urged by appellant, that there was no proof

of the execution of such grant, nor of the loss of the original, or that it was genuine.

Preliminary to offering this evidence plaintiff called a witness, C. V. Gillespie, who testified that he had resided in the city of San Francisco nearly twenty years, "that he was a searcher of records, that he had seen Book K of Deeds first in Alcalde Geary's office; it went to the County Clerk's office, and afterward to the County Recorder's office, after organization of the State."

So far as disclosed by the transcript, the offered evidence was a certified copy of a record made by the County Recorder of an original grant filed in his office for that purpose. The testimony of Gillespie only establishes that Book K, in which this record is found, was, at one time, before the organization of the State, in the office of Alcalde Geary. Whether it was used by Alcalde Geary, or any of his predecessors, in their official capacity, for any purpose, or whether, while so in his office, prior to the organization of the State and the transfer of the same to the County Recorder's office, it contained the record of which the offered transcript was a copy, does not appear. If from the fact that this Book K came from the office of Alcalde Geary, it could be presumed not only that, while so in his office, it contained the record of which a copy was offered, but further presumed that it came to his office from his predecessor Leavenworth; still, from the description of the offered evidence, as contained in the transcript, it would be a most extravagant presumption to assume that the record found therein was made by Alcalde Leavenworth in his official capacity, or by his authority or sanction as Alcalde, as it is stated that the grant was made by Leavenworth, June 30, 1849, and that this record was made March 21, 1850, nearly nine months thereafter, and it nowhere appearing that Leavenworth continued to act as Alcalde till March 21, 1850.

This record, therefore, cannot be regarded as an original entry or record of the official acts of Alcalde Leavenworth; hence, it is not entitled to the dignity of primary evidence for the purpose of establishing the existence or genuineness

of a grant from him. In this particular the case differs essentially from that of *Donner* v. *Palmer* (31 Cal. 508.)

The offered evidence, then, was secondary evidence, and seems to have been so regarded by the party offering the same, upon the assumption that the record, of which he offered a copy, was a transcript of an original grant, issued and delivered to Osborn by Alcalde Leavenworth, and subsequently copied into Book K, while in Alcalde Geary's office, or 'at the Recorder's office; for after the objections of defendant, as above stated, plaintiff introduced a witness, A. J. Morrill, who testified "that he was the plaintiff's agent, and had been for five years; that he had the custody and control of her papers; that she had not in her custody the original of these papers; that he had made great effort to find them; that he knew it was not among her papers; that he resided with plaintiff; she was his daughter." After this preliminary testimony, the Court overruled defendant's objections and admitted the evidence.

This testimony of Morrill in no respect tends to meet or remove the objection that " there was no proof of the execution of such a grant, or that it was genuine," and was, evidently, only offered as preliminary proof that the original grant was not under the control of the plaintiff, or was lost; and even if regarded as sufficient to establish the fact of non-control of the instrument by plaintiff, or its loss, it does not follow that the certified copy of the record offered could properly be read in evidence.

It does not appear, as in the case of *Touchard* v. *Keyes* (21 Cal. 209), that Book K was a book of records of deeds kept by Geary, or any Alcalde of San Francisco, prior to the organization of the State; and even if it had so appeared, we apprehend that unless it appeared upon the face of the offered copy that the execution of the original grant, or conveyance, had been duly acknowledged or proved before recorded, it could not be read in evidence until preliminary proof had been made that the original grant or conveyance was genuine, and was executed by the grantor named therein as required by Section 2 of the Act supplementary to the Act concerning conveyances (Statutes of 1860, p. 357.) In the

case of *Touchard* v. *Keyes* (*supra*), this preliminary proof appears to have been made.

"Books of records of deeds, mortgages, powers of attorney and other instruments kept by or in the possession of any Alcalde, Judge of First Instance, Notary or other officer," are required to be delivered to the County Clerk, and by such Clerk required to be transferred to the Recorder of his county, as provided by Section 39 of Chapter 23, and Section 1 of Chapter 93, Statutes of 1850, and now in pursuance of these laws, to be found in the office of the County Recorder of the proper county; as "Books of Record," simply, are clearly not entitled to a greater degree of verity or higher rank as evidence, than other records or transcripts made and kept by County Recorders of deeds and other instruments of writing *inter partes*, in pursuance of law, unless such books contain what purports to be, and in fact are, the original entries and records of the official acts of the public officers and tribunals from which they come, and where the entries or records contained in such books are stamped with such original character, they are entitled to be considered and treated as public official records, and to rank as primary evidence (*Donner* v. *Palmer*, *supra*) and a certified transcript of these original entries and records from the officer having the official legal custody thereof, occupies the same rank as evidence.

It is an elementary rule of evidence, that the best evidence of which the case in its nature is susceptible, must always be produced. In this case, plaintiff is seeking to establish an Alcalde grant as the source of her title. The best evidence of such a grant is the official public record of the acts of the Alcalde by whom the grant was made; and if such a grant as is claimed by plaintiff was in fact made by Alcalde Leavenworth, in June, 1849, evidence of that fact undoubtedly exists in the book of original grants, in the form of original entries or records of the official acts of that Alcalde, of the date the same was made, attested by his signature, and now to be found in the possession of the County Recorder of San Francisco County—the official custodian of such books. And if, as is sometimes the case, these entries

should not contain a full statement of all the proceedings of the officer in consummating the grant, or an entry in full of the grant as made, there would be found a summary statement of such proceedings sufficient to determine definitively the making of the grant, the subject-matter thereof, to whom and when made ; and a production of this record, or a certified copy thereof, would have, at least, met the demands of the statute of 1860, hereinbefore referred to, and established the genuineness of the grant. In the absence of this, or any secondary evidence tending to establish the genuineness or due execution of the grant claimed, the certified copy from Book K of Deeds was, in my judgment, improperly admitted in evidence.

In the chain of plaintiff's title connecting her with the original grant of the demanded premises, she offered in evidence a deed from Kerst Kinsey, and his wife, Eliza S. Kinsey, to Mrs. Henrietta Morrill, the immediate grantor of plaintiff, dated November 10, 1864. As appears from the evidence found in the transcript, Mrs. Eliza S. Kinsey purchased a portion of the demanded premises in December, 1853, while she was the wife of Ebenezer Sooy, and took a deed of the same to herself under the name of Eliza S. Henderson ; and she subsequently, sometime after the year 1858, was married to Kerst Kinsey, who united with her in the deed of the premises to Mrs. Henrietta Morrill. Mrs. Kinsey was first married to Ebenezer Sooy, in New Jersey, in the year 1848. There is no affirmative evidence of the death of Ebenezer Sooy, or of any legal dissolution of the marriage relations between him and Eliza S. Sooy, now Mrs. Eliza S. Kinsey. The money which Mrs. Eliza S. Sooy, alias Henderson, paid for the premises in 1853 was earned by her while she was the wife of Sooy ; hence, on the purchase, the premises became the common property of Mr. and Mrs. Sooy ; and now, whether the deed of Kerst Kinsey and his reputed wife, Eliza S. Sooy, to Mrs. Morrill, conveyed any interest in the premises therein described, depends on the death, actual or constructive, of Ebenezer Sooy prior to November 10, 1864.

As this Court will presume the Court below to have found

all the facts necessary to sustain its judgment, and as it is necessary to sustain the judgment, that effect should be given to the deed from Kinsey and wife to Mrs. Morrill, as a conveyance of the premises or some undivided portion thereof, and this could not be done if Sooy was found to be alive at the date of the deed, it must be presumed the Court below found the fact of Sooy's death prior to November 10, 1864. Insufficiency of the evidence to sustain this finding is one of defendant's grounds for his motion for a new trial. All the evidence to sustain this finding is contained in the deposition of Eliza S. Kinsey, which, so far as the same bears upon this question, is in substance as follows : She was married to Ebenezer Sooy in Atlantic County, New Jersey, about the year 1848 ; does not know whether he is dead or alive ; has not heard of or seen him for at least seventeen years ; he left this State for the Sandwich Islands about 1850. The deposition of Mrs. Kinsey further shows that she was in San Francisco in 1853, when she purchased the lot, and frequently visited the premises after her purchase thereof.

A person who is shown to have been absent from the State or place of his residence for a period of seven years, without any intelligence having been received from him by his family, acquaintances or others, who continue in the immediate neighborhood of such residence, is presumed to be dead. Such absence must be shown to have been from his last known place of residence. (*Speer* v. *Tremble,* 1 A. K. Marshal, 278.)

In this case no such proof is made. It is not shown that Ebenezer Sooy ever acquired a residence in this State ; for aught that appears, his residence may have been in the State of New Jersey since his marriage there in 1848.

The witness, Eliza S. Kinsey, who was married to Sooy in New Jersey, in 1848, by her own testimony, is found residing in San Francisco, California, as early as 1853, five years after her marriage with Sooy, under an assumed name, since which time she has taken several other names, but, so far as shown, at no time has she recognized her name of Sooy. Her own testimony raised a very strong probability that,

since coming to California, she endeavored to evade, and conceal herself from her first husband, Sooy. Under such circumstances, I do not think a presumption of Sooy's death can properly arise from her simple statement that she has not seen or heard from him for seventeen years.

In my opinion, the judgment and order should be reversed.